Wussow, Plaintiff, vs. THE STATE, Defendant.

*April 3—June 22, 1936.*

For the plaintiff there was a brief by *Sell & Mathiowetz*, attorneys, and *W. H. Churchill* of counsel, all of Milwaukee, and oral argument by *Mr. Churchill* and *Mr. Bernard F. Mathiowetz*.

For the defendant there were briefs by the *Attorney General*, and *Warren H. Resh* and *J. R. Wedlake*, assistant attorneys general, and oral argument by *Mr. Resh* and *Mr. Wedlake*.

The following opinion was filed April 28, 1936:

NELSON, J. Since the sole question to be determined is whether the complaint states a cause of action, it will be necessary to recite the facts alleged.

The facts alleged in the first cause of action may be summarized as follows: The plaintiff is, and was at all of the times mentioned in the complaint, a general contractor, duly qualified to perform highway construction work under the rules and regulations of the state highway commission and the statutes of this state. Prior to September 21, 1933, the state of Wisconsin, through its highway commission, entered upon the construction of a proposed highway, designated by it as the Stoughton-Madison-Portage road project, and to be constructed as a federal highway pursuant to the provisions of ch. 84, Stats. 1933. The commission caused the site of said project to be surveyed, and maps, drawings, plans, and specifications to be prepared. The quantities and nature of the materials to be removed and the location thereof were approximately estimated. On or about September 21, 1933,

the commission advertised for competitive bids for the construction of said project. The published notice to prospective bidders provided that the bids, and also the contract to be let, were subject to and were to be based upon the plans and specifications prepared by the commission, and were subject to and consisted of the following items, plans, and specifications:

"(a) Estimate of Major Items: Clearing 5.86 acres; grubbing 5.86 acres; excavation, earth, borrow, marsh, channel 160,000 cubic yards; loose rock 700 cubic yards; solid rock 300 cubic yards."

(b) Plans on file for inspection in the office of Division No. 1, State Office Building, Madison, Wisconsin.

"(c) Specifications: The standard specifications for road and bridge construction of the State Highway Commission of Wisconsin marked 'approved and adopted January, 1932,' and subsequent revisions and special provisions, shall govern the work."

The plaintiff carefully examined the site of said project and from such examination it did not appear that the quantities as stated in the plans and specifications were incorrect, nor was there anything at or upon the site to indicate or suggest that the quantities as stated in said plans and specifications were erroneous. The plaintiff relied upon the information contained in the maps, drawings, plans, and specifications in submitting his bid or proposal upon the required proposal form, copy of which is annexed to the complaint. The plaintiff was awarded the contract. The plaintiff entered into the contract relying upon the plans and specifications as prepared by the commission and the representations made therein, as to quantities of work specified. The estimates and plans submitted by the commission were erroneous as to the amount of work to be done upon said project, particularly so

as to the estimated quantities of several of the respective items required to be excavated and removed. The work actually done was correctly stated in the final estimate of the commission, copy of which is annexed to the complaint. The plaintiff fully completed his contract, and the work was accepted by the highway commission on August 2, 1934, and by the United States Bureau of Public Roads on October 18, 1934. By reason of the mistakes and miscalculations of the highway commission, and its employees, in making the estimates, it was necessary for the plaintiff to perform a great deal of extra work which included difficult grading, excavating large quantities of loose and solid rock in excess of the estimates, which increased quantities are fully set out in the final estimate of the commission.

The amount of loose dirt that was moved was less than that specified. The amount of loose rock was approximately 6.6914 times more than that specified, and the amount of solid rock was approximately 31.6033 times more than that specified. Because such loose and solid rock so greatly exceeded the amounts estimated, and was mixed with the loose dirt, which was less than the amount estimated, the work was entirely different than that specified, and the unit prices mentioned in plaintiff's proposal and contract were way below the prices that would be set for said work under the conditions as they existed. The amount of borrow that was moved was approximately 4.7271 times greater than that estimated, and because such excessive loose and solid rock was mixed with borrow the work was entirely different from that specified, and the unit prices set out in the contract were way below the prices that would be set for said work under the conditions as they existed. The amount allowed the plaintiff by the commission is inadequate and not the true amount due the plaintiff. Exhibit E, attached to the complaint, is a compilation of what the plaintiff asserts should be allowed him as ad-

ditional compensation for the work performed. The plaintiff asserts that the state is indebted to him in the sum of $31,158 in addition to the sum of $54,011.99 paid him or allowed him by the commission. The plaintiff's claim was presented to the legislature in 1935 but allowance thereof was refused.

The facts alleged in the second cause of action are as follows: All of the facts stated in the first cause of action are reiterated and incorporated into the second cause of action by reference. The amount of the plaintiff's bid for the completion of said contract was $38,869.34. The total amount allowed the plaintiff by the commission upon final estimate was $54,011.99. One of the special provisions of the contract provided that in the event the total cost of the work calculated from the original proposal quantities, and the contract unit prices, amounted to over twenty-five per cent of such original bid, then and in that case, additional compensation in a sum to be thereafter determined should be paid. As fully appears from the original contract and the final estimate, such total increase in the cost of the work was approximately thirty-nine per cent. During the period of performance of the contract, and on or about July 23, 1934, the cost of said work, required to be performed according to the terms of the contract, having exceeded the original contract amount by more than twenty-five per cent, the plaintiff duly demanded of the commission a supplemental agreement to cover said additional cost of the work. Thereafter the plaintiff and the commission agreed that the plaintiff might proceed with and complete the work without prejudice to his right to demand a supplemental agreement. Upon completion of the work the plaintiff demanded additional compensation pursuant to his asserted right to a supplemental agreement, based upon a revision of a number of the unit prices specified in his proposal and contract. The commission rejected his

claim and refused to allow him more than the total sum of $54,011.99 hereinbefore mentioned. The plaintiff demands judgment for the sum of $31,158 in addition to the amount allowed by the commission.

Exhibit A, annexed to the complaint, is a copy of the plaintiff's proposal. It contained the following paragraphs:

"The undersigned bidder, submitting this proposal, hereby declares and agrees to be bound, and to perform the work, in accordance with all the terms, conditions and requirements of the within and foregoing proposal, the contract, the standard specifications for road and bridge construction of the state highway commission of Wisconsin marked 'approved and adopted January, 1932,' the special provisions and supplemental specifications bound herewith, and the plans and working drawings. The said standard specifications and all plans and working drawings are made a part hereof, as fully and completely as if attached hereto. . . .

"The bidder declares that, he has carefully examined the site of, and the proposal, plans, specification and contract forms for the work contemplated, and it is assumed that the bidder has investigated and is satisfied as to the conditions to be encountered, as to the character, quality, and quantities of work to be performed and materials to be furnished, and as to the requirements of the specifications, special provisions and contract. It is mutually agreed that submission of a proposal shall be considered conclusive evidence that the bidder has made such examination. . . .

"The bidder declares that he understands that the estimate of quantities in the attached schedule is approximate only and that the attached quantities may be greater or less in accordance with the specifications.

"The bidder agrees to perform the said work, for and in consideration of the payment of the amount becoming due on account of work performed, according to the unit prices bid in the following schedule, and to accept such amounts in full payment for said work."

Plaintiff's proposal also contained a "schedule of prices." So much of the plaintiff's proposal as will illustrate the man-

ner of bidding and the "unit prices" for the different kinds of work is as follows:

| Approximate quantities | Items with unit bid price written in words | Unit bid price (In figures) | Total Amount of bid |
|---|---|---|---|
| 156,604 | Cubic yards "Earth Excavation" for .... Dollar.. and eighteen cents per Cu. Yd. - - - - - - | .18 | $28,188.72 |
| 700 | Cubic yards "Loose Rock Excavation" for .... Dollar.. and eighteen cents per Cu. Yd. - - - - | .18 | 126.00 |
| 300 | Cubic yards "Solid Rock Excavation" for .... Dollar.. and sixty cents per Cu. Yd. - - - - - | .60 | 180.00 |
| 404 | Cubic yards "Marsh Excavation" for .... Dollar.. and fifteen cents per Cu. Yd. - - - - - - | .15 | 60.60 |
| 1,906 | Cubic yards "Earth Borrow Excavation" for .... Dollar.. and twenty-two cents per Cu. Yd. - - - - | .22 | 419.32 |

There were numerous other items and unit prices which need not be recited. The total amount of plaintiff's bid was $38,869.34.

The following material general clauses and covenants, were by reference incorporated into plaintiff's proposal and contract:

"The quantities scheduled in the plans and proposals are to be considered as approximate and as prepared for the comparison of bids only. The commission does not expressly nor by implication agree that the actual quantities involved will correspond exactly therewith; nor shall the bidder plead misunderstanding or deception because of such estimate of quan-

tities, or of the character, location, or other conditions pertaining to the work. The unit prices to be tendered by the bidder are to be tendered expressly for the scheduled item of work and the quantities thereof may be increased or decreased within the restricting percentages hereinafter stipulated. Payment to the contractor will be made for the actual quantities only of the work performed or materials furnished in accordance with the contract, and it is understood that the schedule quantities of work to be done and materials to be furnished may each be increased or diminished as hereinafter provided, without in any way invalidating the bid price.

"The bidder is required to examine carefully the site of, the proposal, plans, specifications, special provisions, and contract forms for the work contemplated; it will be assumed that the bidder has investigated and is satisfied as to the conditions to be encountered for performing the work as scheduled or as at any time altered without resulting in increases or decreases of more than the restricting percentage hereinafter stipulated, and as to the character, quality, and quantities of work to be performed and materials to be furnished, including increases and decreases, and as to the requirements of the specifications, special provisions, and contract. It is mutually agreed that submission of a proposal shall be considered conclusive evidence that the bidder has made such examination and is satisfied as to all the conditions and contingencies.

"Increased or Decreased Quantities. The engineer reserves the right to make such alterations in the plans, or in the quantities of work, as may be necessary. Such alterations shall, in so far as practicable, be ordered in writing before starting work on such alterations. *Further, the quantities of any items of work may vary from the quantities scheduled on the plans and in the proposal due to unforeseen or other conditions.* Alterations in quantities shall not be considered as a waiver of any conditions of the contract, nor invalidate any of the provisions thereof; provided that a supplemental agreement with the contractor for the item or items involved will be necessary when the alterations involve: (1) An extension or shortening of the length of the project; or *(2) an increase or decrease of more than twenty-five (25) per cent of the*

*total cost of the work calculated from the original proposal quantities and the contract unit prices;* or (3) an increase of more than twenty-five (25) per cent in the quantity of any one major contract item. (A major contract item shall be construed to be any item the total cost of which is equal to or greater than five (5) per cent of the total contract cost, computed on the basis of the proposal quantity and the contract unit price. Items appearing as minor items in the original proposal shall be construed as becoming major items when increased to the extent that the total cost of the item is equal to or greater than five (5) per cent of the total original contract cost.)

"Alterations involving an increase or decrease of more than twenty-five (25) per cent in the quantity of minor contract items will not require a supplemental agreement.

"The contractor shall not start work on any alteration requiring a supplemental agreement until the agreement setting forth an equitable adjustment of compensation, satisfactory to both parties, shall be executed by the engineer and the contractor. . . .

"When alterations in plans or quantities of work not requiring supplemental agreements as hereinbefore provided are ordered and performed, the contractor shall accept payment in full at the contract unit prices for the actual quantities of work done, and no allowance will be made for any increased expense, loss of expected reimbursement, or loss of anticipated profits suffered or claimed by the contractor resulting either directly from such alterations or indirectly from unbalanced allocation among the contract items of overhead expense on the part of the bidder and subsequent loss of expected reimbursement therefor, or from any other cause.

"Compensation for alterations in plans or quantities of work requiring supplemental agreements shall be as stipulated in such agreements."

Exhibit C, annexed to the complaint, is the final construction estimate of the commission. It shows, among other things, that the plaintiff excavated 4,684 cubic yards of loose rock, 9,481 cubic yards of solid rock, 9,010 cubic yards of borrow, and that the commission computed the amount due

the plaintiff by multiplying the actual quantities of units of work done by the proposal unit prices, except as to the item which related to the solid rock excavation. As to that item the commission allowed the plaintiff the proposal unit price of sixty cents per cubic yard for the work of excavating the first 4,049 cubic yards, at which point, under the contract, that item became a major item, increased twenty-five per cent. For the remaining 5,432 cubic yards it allowed the plaintiff $1.96 for each cubic yard of solid rock excavated.

The theory of the plaintiff's first cause of action, gathered from the complaint itself and the argument made in his brief, is that the state, acting through its highway commission, put out proposals for bids on a certain highway construction project; that the estimates of the various kinds and quantities of work involved in the project were accurate, or at least approximately so, and amounted to representations or warranties as to the nature and amount of the work to be done; that the work actually required to be performed was in several respects so different from the work as estimated as to constitute material misrepresentations by the commission which should entitle the plaintiff to recover the reasonable value of the services performed. Although the proposal for bids put out by the commission did state the "approximate quantities" of the various kinds of work to be done, such as clearing, grubbing, earth, loose rock, solid rock, marsh, and earth borrow excavation, it is clear from a reading of the proposal in connection with the general clauses and covenants, the special provisions, etc., hereinbefore recited, that the quantities were estimated and the kinds of work classified largely for the convenience of the commission in analyzing and intelligently passing upon the bids received. No contractor qualified to perform highway construction work and especially the work of excavating, grading, and preparing a roadbed, could have understood, from the proposal and con-

tract, that the kinds and quantities of the work specified were in the nature of warranties or representations, or that, if the quantities varied to such an extent as to render the estimated quantities not approximate, that he would be permitted to disregard the plain terms of the contract and recover the reasonable value of the services performed. There are too many provisions in the proposal, and the special provisions supplementing the standard specifications, to permit of the conclusion that the estimated quantities set forth in the proposal were understood to be representations or warranties so as to bring this action within the holdings in *City of Richmond v. I. J. Smith & Co.* 119 Va. 198, 89 S. E. 123; *Pitt Construction Co. v. City of Alliance* (C. C. A.), 12 Fed. (2d) 28; *Maney v. Oklahoma City,* 150 Okla. 77, 300 Pac. 642, and *Hollerbach v. United States,* 233 U. S. 165, 34 Sup. Ct. 553. The *City of Richmond Case, supra,* involved a clear misrepresentation contained in the blueprint of a project proposed to be constructed. The *Pitt Construction Co. Case, supra,* involved a substantial misrepresentation in the blueprints for a coagulation concrete basin which was definitely located with reference to the ground by stated elevation figures. The *Maney Case, supra,* involved the construction of a by-pass, the course or location of which was materially changed by the defendant city after the contract was entered into, which resulted in the necessity of excavating some sixty thousand cubic yards of rock, when the original proposal involved earth excavation only and a negligible quantity of rock. The *Hollerbach Case, supra,* involved the construction of a dam and a clear-cut representation as to the nature of the fill back of an old dam which was to be replaced.

In none of these cases was the work classified or performed under a contract at all similar to the contract here considered.

In *McDonald v. State,* 203 Wis. 649, 235 N. W. 1, an original action involving a somewhat similar claim against

the state, recovery was permitted, but the contract there considered differed materially from the contract here, and was more favorable to the contractor and decidedly less exacting in its terms and provisions. That contract did not comprehensively and specifically cover situations such as arose in this case during the progress of the work. The *McDonald Case* cannot be said to rule this controversy in view of the fact that many new and different provisions have been incorporated into the proposals put out by the commission and the contracts entered into by it since that case was decided. Under the contract here considered it was specifically understood and agreed that the bidder had carefully examined the site of the work and the character, quality, and quantities of the work to be performed; that the estimate of quantities was approximate only and might be greater or less than the estimated quantities; that the bidder should not plead misunderstanding or deception because of such estimate of quantities or of the character, location, or other conditions pertaining to the work; that he would be paid for the actual quantities of the work performed in accordance with the contract; that the bidder was required to examine carefully the site of the work contemplated, and that he was satisfied as to the conditions to be encountered for performing the contract work, or as altered, unless resulting in increases or decreases of more than the restricting percentages stipulated; that the submission of a proposal should be considered conclusive evidence that the bidder had made such examination, and was satisfied as to all the conditions and contingencies; that the quantities of any items of work might vary from the quantities scheduled on the plans in the proposal due to unforeseen or other conditions, and that the plaintiff would perform the work for the unit prices unless there occurred an increase or decrease of more than twenty-five per cent of the total cost of the work calculated from the original proposal quantities and the contract unit prices, upon either of which contingen-

cies he would be entitled to a supplemental agreement. In view of all of these provisions, which were incorporated into the contract, it cannot be said that the estimates of the commission amounted to representations or warranties. The plaintiff alleges no fraud, no misrepresentation, no deception on the part of the commission, and no errors in the plans and specifications except those based upon the estimated quantities. It is our conclusion that the quantity estimates contained in the proposal should not be considered as representations or warranties, and therefore the facts alleged in the first cause of action are not sufficient to constitute a cause of action.

The plaintiff's second cause of action is grounded upon the proposal and contract, and a recovery is sought under that provision of the general clauses and covenants known as section 4, "Scope of Work," subsection 1.4.3, hereinbefore recited in full. The particular provision upon which the plaintiff relies is as follows:

"Alterations in quantities shall not be considered as a waiver of any conditions of the contract, nor invalidate any of the provisions thereof; provided that a supplemental agreement with the contractor for the item or items involved will be necessary when the alterations involve: . . .

"(2) An increase or decrease of more than twenty-five (25) per cent of the total cost of the work calculated from the original proposal quantities and the contract unit prices."

Whether the second cause of action states facts sufficient to constitute a cause of action concededly must be determined by the construction which properly should be given to the language, "the total cost of the work calculated from the original proposal quantities and the contract unit prices." The plaintiff contends that the words "the total cost of the work" means the actual cost of the work calculated from the original proposal quantities but not the original contract unit prices. In other words, he contends that the word "original" relates only to the "proposal quantities" and not to the "contract unit prices." This asserted ambiguity, it is contended,

should be resolved in favor of the plaintiff and construed strictly against the commission. In our opinion the language is not ambiguous. The expression, "the total cost of the work calculated from the original proposal quantities and the contract unit prices" is in our view clear. The words "the total cost of the work" are qualified by the words "calculated from the original proposal quantities and the contract unit prices." Qualifying phrases are to be referred to the next preceding antecedent unless the context clearly shows the contrary. *State v. Bennett,* 213 Wis. 456, 474, 252 N. W. 298; *Jorgenson v. Superior,* 111 Wis. 561, 566, 87 N. W. 565; *Zwietusch v. East Milwaukee,* 161 Wis. 519, 522, 154 N. W. 981; *Dagan v. State,* 162 Wis. 353, 354, 156 N. W. 153.

Since an approval of the plaintiff's construction is a necessary prerequisite to upholding his contention that the facts alleged in his second cause of action are sufficient, little more need be said.

It may be stated, however, that the increased work calculated from the original proposal quantities, multiplied by the original unit prices never exceeded the twenty-five per cent so as to entitle the plaintiff to a supplemental agreement on that ground. The commission's final estimate allowed the plaintiff $54,011.99, which amounted to an increase over the original contract price of more than twenty-five per cent. But the final estimate included the revised or adjusted compensation to which the plaintiff became entitled when the solid rock item, a minor item to begin with, became a major item, and increased more than twenty-five per cent. The plaintiff's construction of the words, "the total cost of the work," if approved, would lead to absurd results. Under that construction, a contractor would be permitted to make an exceptionally low bid, obtain a contract, and proceed with the work. When the actual cost of the work over the original contract price had increased more than twenty-five per cent he would then be entitled to a supplemental agreement. A

construction which would permit such a result should not be approved. Since the plaintiff's second cause of action is based upon a construction of the language of the contract which cannot be approved, it follows that the demurrer of the state to it must be sustained.

*By the Court.*—The demurrer to the plaintiff's complaint is sustained.

A motion for a rehearing was denied, with $25 costs, on June 22, 1936.