Bowen, Appellant, vs. Industrial Commission and others, Respondents.

*November 6—December 2, 1941.*

For the appellant there were briefs by *M. J. Paul* of Berlin, attorney, and *Rieser & Mathys* of Madison of counsel, and oral argument by *Mr. Clifford G. Mathys* and *Mr. Paul.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents Berlin Motors and Hardware Mutual Casualty Company there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *W. L. Jackman.*

MARTIN, J. The single question on this appeal is whether there is credible evidence to sustain the finding that at the time of his accident appellant was on a personal mission and

was not performing service growing out of and incidental to his employment.

The facts briefly stated are as follows: Appellant, age twenty-three, was employed as an automobile salesman by the Berlin Motors, at Berlin, Wisconsin. He completed the sale of a used car to a customer at about 10:30 p. m. on August 31, 1939. Soon thereafter, in company with the customer and a Mr. Kratz, who was also an automobile salesman for the Berlin Motors, appellant drove from the garage of his employer to a tavern located about a mile and one half from the Berlin Motors garage. While at this tavern appellant informed the tavern keeper that his automobile clock, which had been removed for repairs, was ready for installation. Appellant, accompanied by the customer and Mr. Kratz, left this tavern sometime after 11:30 p. m. and returned to the garage of his employer in Berlin. Upon arrival at the garage the customer took possession of his car, whereupon appellant and Kratz then started in the direction of Ripon in appellant's car. After driving toward Ripon six or seven miles they turned back, and when about a mile and one half from Berlin their car was sideswiped by a truck, resulting in serious injuries to appellant. Appellant testified that he and Kratz started out for Ripon with the intention of seeing a prospect in regard to the sale of a car. The Industrial Commission found that at the time of the accident appellant was on a personal mission and was not performing any service growing out of and incidental to his employment, and dismissed the application for compensation. The circuit court confirmed the order of the Industrial Commission.

Appellant's purpose in starting in the direction of Ripon presented a single question of fact for the commission's determination. The findings of the examiner are as follows:

"That the applicant was employed by the respondent as a car salesman and his duties required that he occasionally work evenings in making sales; that on August 31, 1939, the ap-

plicant completed a sale of a used car about 10:30 p. m. and then drove to a tavern in company with the customer to whom he had sold the car; that at 11:30 p. m. applicant returned to respondent's place of business and the customer took delivery of his car; that the applicant and another salesman took applicant's car and drove toward Ripon, Wisconsin; that they did not have an appointment at Ripon to sell or demonstrate any car; that they had no business to transact there for the respondent; that the accident occurred shortly after 12:30 a. m. on September 1, 1939, about one and one half miles from Berlin, Wisconsin.

"The examiner concludes *and finds* that at the time of the accident the applicant was on a personal mission; that he was not performing service growing out of and incidental to his employment by the respondent."

Upon appellant's application for a review of the examiner's findings, same were confirmed by the commission.

It is argued that since appellant did a large part of his work outside of regular hours and was within the course of his employment at about 10:30 p. m. when he, accompanied by a customer and Kratz, drove out to Largette's tavern, a presumption of continuity obtains. In support of this contention appellant cites *Tewes v. Industrial Comm.* 194 Wis. 489, 215 N. W. 898; *Racine County v. Industrial Comm.* 210 Wis. 315, 246 N. W. 303. Assuming that the trip to Largette's tavern could be considered in the course of appellant's employment, that trip ended when the party returned to the employer's place of business. Therefore, there is no basis for the presumption of continuity of service as in *Tewes v. Industrial Comm., supra;* and *Racine County v. Industrial Comm., supra.* Here the question is whether the trip toward Ripon was from its inception a personal trip or a business trip.

Appellant further contends that the uncontradicted testimony is that the only reason for starting toward Ripon was to see a man whom appellant and Kratz thought was a prospect for a car. Kratz did not testify at the hearing, although present, so we have only the uncorroborated testimony of

appellant concerning the purpose of his part-way trip to Ripon. Appellant testified that he and Kratz started out for Ripon at 11:30 p. m. to see a prospect in regard to the sale of a car. They had no appointment to see anybody. Appellant did not know the prospect's name. He understood the party worked in a pickle factory and that the pickle factory operated late at night. Neither appellant nor Kratz had told anybody that they were going on this trip. At the hearing appellant testified that Kratz had the prospect in Ripon and that Kratz had asked him to go along to assist. In a signed statement given by appellant eight days after the accident he said:

"When I had left to go out on the Young deal [the trip to Largette's tavern] Kratz had mentioned our going to Ripon. Maybe Kratz had mentioned it during the day, I cannot remember exactly. Anyway Kratz asked that I get back from the Young deal as soon as I could so Kratz and I could go over to Ripon. Our idea in going over to Ripon was to contact a customer or a prospect for a car, either new or used. I cannot recall this prospect's name without referring to my customer's book, which is somewhere I don't know. The way I learned of this customer is when he came into the garage or at the car lot, I cannot remember more exactly. Or maybe somebody told me about this prospect. I cannot say more definitely, or maybe it was Kratz's customer. This prospect, I cannot describe him, lived in Ripon, I do not know where. He worked nights in a factory, I do not know which factory. It was either the prospect or my informants who told me this prospect worked nights, I cannot say more definitely. Either I had this factory marked in my notebook or Kratz knew of its name. Either Kratz knew or the prospect's name was in my notebook, I cannot say more definitely."

It will be noted that when appellant gave this statement he could not definitely state whether the alleged prospect at Ripon was his or Kratz's. At the hearing an attempt was made to establish the fact that there was a prospect for a car at Ripon. Appellant called as a witness Frederick Hass, who worked daytimes in a pickle factory at Ripon. He hadn't worked

there nights since 1938. Hass testified that at the time in question he was not a prospect for a car. Arthur Plotz, a brother-in-law of Hass, testified that he told Kratz that Hass was a prospect but did not mention Hass' working hours.

The burden of proof as to all facts essential to compensation was on the plaintiff. In *Winter v. Industrial Comm.* 205 Wis. 246, 250, 237 N. W. 106, the court said:

"Hence, if the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation, it would be the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be.

"The question in this case is not whether there is sufficient credible evidence to warrant a positive finding that the injury did not occur as a result of the accident testified to by claimant, but whether the evidence is sufficient to warrant the commission in entertaining that degree of doubt which would prevent them from being satisfied that the injury did occur in the manner claimed by applicant." To same effect see *Widell Co. v. Industrial Comm.* 180 Wis. 179, 192 N. W. 449; *Loomis v. Industrial Comm.* 216 Wis. 202, 206, 256 N. W. 693.

In *Woman's Home C. R. Club v. Industrial Comm.* 231 Wis. 371, 376, 285 N. W. 745, where it was agreed between the parents of the deceased and his widow that the widow would apply for compensation and pay one half of the recovery to the parents, this court said:

"However, such an agreement should lead the commission and its examiners to view the evidence of the parties to it as to unestrangement *with suspicion and scrutinize it carefully and not give credence to it unless corroborated by credible evidence* or it quite plainly supports a finding of unestrangement from its inherent probability or proved circumstances."

It is argued that since there was no oral testimony to deny that appellant's trip was to call on a prospect at Ripon, the

commission was bound to accept his testimony as a verity. Citing *Voswinkel v. Industrial Comm.* 229 Wis. 589, 282 N. W. 62. Appellant contends that the instant case is ruled by *Voswinkel v. Industrial Comm., supra.* Neither the *Voswinkel Case* nor any other case, to our knowledge, holds that the testimony of a party or a witness must be believed regardless of its incredibility or other infirmities. As the court below said:

"The commission was justified in not believing applicant's story. It might well strike the commission as having been made out of whole cloth."

The law does not require the examiner to make a specific finding that he does not believe the testimony of a party or a witness. That is not required in judicial proceedings nor in proceedings before administrative bodies. The *Voswinkel Case, supra,* does not so hold. The finding of fact made must speak for itself.

In the *Voswinkel Case, supra,* the conclusion of the examiner that the applicant was not injured in the course of her employment was made upon assumed lack of authorization by the library board of the city of Tomah prior to applicant's trip to the city of Madison. The concluding paragraph of the examiner's finding reads (p. 594):

"The examiner, therefore, concludes that applicant was not injured in the course of her employment by the city of Tomah; that the nature of the work and the established custom of the parties relative to express prior authorization for travel, stamp the trip in question as one outside the scope of applicant's employment even though she 'took her work' with her when she left and discussed library problems with others in that field, while she was gone."

It is not necessary to here repeat the facts in that case. They are fully set forth in the opinion, from which it clearly appears that Miss Voswinkel's testimony was fully corroborated in every respect. Concerning her authority to make the

trip to Madison to discuss library matters with Miss Hazel-
tine or other members of the library commission, the president
of the library board of the city of Tomah testified in part as
follows (p. 593) :

"The board had complete confidence in Miss Voswinkel.
. . . We rather expect the librarian to improve herself pro-
fessionally, and we feel that if she has an opportunity to do
that with some expense to the board, that we ought to pay her.
. . . *It was understood that she might use her discretion in
making trips in the interest of the library.* . . . If she had
called me that day, I would have told her I thought the board
would approve the expenditure. . . . I would have told her I
thought the trip was legitimate and would be allowed." . . .
I would have told her I thought it was a very wise trip under
the conditions, because it would be a very inexpensive trip.
. . . *She had authority to use her judgment and I would
think she could continue to make trips like that until the board
voted she couldn't because that is an implied understanding
that we have.*"

The applicant's testimony in the instant case is wholly with-
out corroboration. If it were true it could have been corrobo-
rated by the testimony of Mr. Kratz, who accompanied him
on the trip and who was present at the hearing before the
Industrial Commission's examiner. · He was not called to
testify. Failure to call Kratz as a witness was not a mere over-
sight on the part of appellant. The record discloses that there
was some discussion between counsel and the examiner as to
whether the appellant was going to call Kratz as a witness.
In this discussion appellant's counsel said :

"Let it be understood, I haven't determined yet whether I
desire to put him [Kratz] on. I am not saying I am or am
not. I want the case to go along before I make my mind up
as to that."

In 1 Wigmore, Evidence (2d ed.), p. 584, § 285, the author
says :

" . . . The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted. The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." See *Booth v. Frankenstein,* 209 Wis. 362, 370, 245 N. W. 191.

Whether appellant was injured while in the course of his employment depends upon his purpose in driving toward Ripon. The ascertainment of his purpose presented a simple question of fact for the examiner and the commission on review. The findings made are conclusive upon the court.

*By the Court.*—Judgment affirmed.