UREN and wife, Plaintiffs, vs. PURITY DAIRY COMPANY and another, Defendants : WEINBRENNER and another, Impleaded Defendants. [Two appeals.] *

*February 16—May 11, 1948.*

* Motion for rehearing denied, with $25 costs in one case, on July 1, 1948.

448

For the plaintiffs there was a brief by *Jones & Hamilton* of Dodgeville, and oral argument by *Frank D. Hamilton.*

For the defendants Purity Dairy Company and Hardware Mutual Casualty Company there was a brief by *Kopp & Mc-Kichan* of Platteville, attorneys, and *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison of counsel, and oral argument by *MacArthur McKichan* and *Horace Wilkie.*

For the defendants Carl Weinbrenner and Farm Bureau Mutual Insurance Company of Wisconsin there was a brief by *Riley, Riley & Riley* of Madison, and oral argument by *William J. Riley* and *John Riley.*

ROSENBERRY, C. J.   The trial of this case was lengthy and exhaustive.   It would serve no good purpose to attempt a complete statement of the facts, and we shall refer only to such facts as are necessary to an understanding of the decision.

On the trial the jury found Robert Polkinghorn, the driver of the Dairy Company milk truck, causally negligent in the following particulars:

(a)  With respect to keeping a proper lookout.

(b)  With respect to traveling at an excessive rate of speed in view of the road conditions then existing.

(c)  With respect to keeping his truck under control.

(d) With respect to driving his truck on the right-hand side of the traveled portion of the road and not yielding one half thereof to the other car.

With respect to (a), (b), and (c) we find no evidence in the record sustaining the answers to these questions. Substantially all of the evidence in respect to these matters was the testimony of Polkinghorn himself. From the evidence it appears that he was traveling at approximately twenty miles an hour, which was the speed of at least four other automobiles traveling upon the same highway at or about the same time and under approximately the same conditions. As to lookout, he had lowered the window of the cab and had his head out of the window looking at the roadway and at the snowbank on the south side so that the platform of his truck would not strike it. He saw everything that there was to see, including the approaching car of Weinbrenner at a distance of one hundred feet. He had his truck under control. There is no evidence of any failure of duty in that respect.

Whether the evidence sustains the finding of the jury in regard to the place where he was driving his truck and his failure to yield one half of the right of way to the other car, requires more consideration.

Sec. 85.15 (1), Stats., provides:

"Upon all highways of sufficient width, except upon one-way highways, the operator of a vehicle shall operate the same upon the right half of the roadway."

Sec. 85.15 (4), Stats., provides:

"Operators of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other at least one half of the main-traveled portion of the roadway as nearly as possible."

Sec. 85.10 (21) (e), Stats., provides:

"Roadway is that portion of a highway between the regularly established curb lines or that portion which is commonly used by vehicular traffic."

Prior to the time of the collision there had been a fall of snow. A snowplow had passed over the roadway and there were banks of snow on each side of the road some four or five feet in height.´ The distance between the snowbanks was measured by the traffic officer, who testified:

"The road at the point of impact could have been either over or under twenty-two feet because the snowbanks were not even. . . . The twenty-two-foot measurement was from extreme edge to extreme edge. When I arrived at the scene, there was snow and ice on the roads on both ends of the traveled part. There was a churned-up portion in the center where vehicles had been traveling. The gravel showed up and the ordinary path was pretty well churned up. The line of travel kept pretty much to the center of the road. On the north side the snow extended out about seven feet toward the traveled portion. The traveled portion ran on the south side, as I recall. The snow and ice on the south side were a little narrower than on the north. The churned-up section was seven, possibly eight, feet wide . . . and was a little to the south side of the road. The center line of the highway, as shown in Exhibit 5, did not run directly along the center of this churned-up portion, necessarily. Exhibit 5 shows also the north part of the road on which there was no track.

"Exhibit 6 is a picture looking east, showing the rear of the truck with respect to the snowbank."

It is apparent from a consideration of the testimony which is undisputed, and the position of the vehicles as disclosed by the photographs to which reference has been made, that there is some confusion due to the fact that at times reference is made to the portion of the roadway which had been traveled and which was seven or eight feet in width, and the travelable portion of the roadway which was eighteen feet in width. Referring now to the travelable portion of the highway it is clear from the testimony and photographs that the truck was at all times on the south or the truck driver's right-hand side of the highway. It is also apparent that the Weinbrenner car followed that portion of the roadway which had been recently

454

Exhibit 4.

*Camera pointed easterly and about thirty-five feet from object.*

Exhibit 5.

*Camera pointed westerly.*

EXHIBIT 6.
*Camera pointed easterly.*

traveled and by doing so had invaded its left-hand side of the roadway and that this caused the collision. Photographs Exhibits 4, 5, and 6, printed herewith, make this clear. A skid mark was made by one of the cars but the traffic officer could not say whether by the truck or the car.

The only evidence in the case which in any way tends to show that the truck was not on its own right side of the highway is a statement made by Polkinghorn to the traffic officer. The traffic officer testified as follows:

"I talked with Mr. Polkinghorn after the accident. I asked him as to what he thought was the cause, and, of course, naturally he mentioned fog. He mentioned that he had his head out of the window. I did not go into any detail with him about his position in the road, because the boy was quite badly shaken. He said he really did not know how many feet he was driving from the south bank. He thought his rack was perhaps three to six feet off the bank, but that the other car was into the middle, too. He did not know the exact location."

On cross-examination at a later time the traffic officer testified:

"I observed that Polkinghorn was feeling pretty badly about the accident at the time I took him to town. He was almost hysterical. He was certainly not in a very good frame of mind. Polkinghorn talked understandably but pretty well disjointedly. He didn't stay on any one subject very long but just wandered on, nonsentences. He did say that he thought that the right side of the platform of his truck was from three to six feet from the south side of the road, he was not exactly sure, and that the other fellow was in the middle of the road too."

However, it is considered in view of the definiteness and character of the evidence respecting the location of the truck, the statement if made by Polkinghorn while still in a disturbed condition soon after the accident, which was no doubt con-

tributed to by the blow which he received on the head, this evidence is not sufficient to raise a jury issue. While the statement was admissible as a statement of Polkinghorn it was not an admission as to the Dairy Company because when it was made he was not acting within the scope of his employment, nor was it a part of the *res gestæ*. It is considered, therefore, that the trial court was in error in awarding judgment in favor of the plaintiffs against the Dairy Company and its insurer.

With respect to the controversy between the plaintiffs and the defendant Weinbrenner and his insurer, the facts are as follows:

The jury found that Weinbrenner, the driver of the defendant Weinbrenner's car, was negligent with respect to, (a) lookout; (b) speed; (c) keeping his car under control; and (d) driving on his left-hand side of the traveled portion of the roadway and in failing to yield one half thereof to the other car, and that these were respectively a cause of the collision. Because the findings (a) and (d) are amply supported by the evidence it is not necessary to consider findings (b) and (c).

The fifth question was as follows:

"Were the hazards which Alice Uren [the deceased daughter] assumed as a guest when she entered auto and continued to ride in the Weinbrenner car added to or increased by Carl Weinbrenner, Jr., as her host:

"(a) With respect to not keeping a proper lookout? Answer: No.

"(b) With respect to traveling at an excessive rate of speed in view of the road conditions then existing? Answer: No.

"(c) With respect to keeping his car under control? Answer: No.

"(d) With respect to driving his car on the right-hand side of the traveled portion of the highway and not yielding one half thereof to the other car? Answer: No."

On motions after verdict the trial court, in reliance upon *Knipfer v. Shaw* (1933), 210 Wis. 617, 621, 246 N. W. 328, 247 N. W. 320, changed the answers from "No" to "Yes," and on the defendant Weinbrenner's and his insurance carrier's appeal it is argued that this was reversible error. In that case it was said:

"In all of those cases [cases in which the guest assumed the risk] three elements were present which prevented recovery by a guest: (1) A hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of the danger."

The argument made in support of this contention is in effect that by reason of Alice Uren having entered the car when there was a heavy fog, she assumed all the consequences which might arise during the course of the trip. No question was submitted to the jury respecting the presence of fog as a causal factor in the situation and apparently none was requested. It is not argued that Carl Weinbrenner's failure to keep a proper lookout was due to fog, or his failure to keep his car on his right-hand side of the traveled portion of the roadway was due to fog. It appears incidentally in the course of the trial that a number of other cars were safely traveling the highway at about the same rate of speed. There is not a word of testimony in the case as to what Alice Uren did, if anything, in the course of the trip from her home to the point of collision. She was killed in the collision and Carl Weinbrenner has no recollection of what happened. There is no evidence in the case which sustains the contention that the injuries to Alice Uren were due to the foggy condition of the atmosphere at the time. Although the atmosphere was foggy the cause of the accident was the failure of Carl Weinbrenner, Jr., to exercise the proper degree of care. No doubt the presence of the fog, which was dense at times, required a higher degree of care and vigilance

on his part than would have been required if the atmosphere had been clear.

It is considered that the trial court correctly changed the answers to the questions in No. 5, and the judgment of the plaintiffs against defendants Weinbrenner and his insurance carrier should be affirmed.

It is considered that some comment should be made respecting the judgment entered in this case. It covers nearly five pages of the appendix, and contains many unnecessary and confusing recitals. It amends a former judgment. It awards judgment in favor of the Purity Dairy Company against Carl Weinbrenner and his insurer for one half of the amount of damages found by the jury "for contribution on said cross complaint being subject to and conditioned by the fact that the original judgment herein, by virtue of an amendment of the plaintiffs' pleadings during the course of the trial herein so as to cause the complaint to include as defendants Carl Weinbrenner and the Farm Bureau Mutual Insurance Company of Wisconsin, provides that the plaintiffs shall have and recover judgment against the defendants and the interpleaded defendants for the sum of $5,517.23 together with costs and disbursements taxed at $216.65, and thereby in effect enforces in the plaintiffs' action the contribution to which the original defendants are entitled on their cross complaint."

Such recitals are out of place in a judgment. If recitals are necessary they should be in the paragraph preceding the formal part of the judgment. 1 Freeman, Judgments (5th ed.), p. 124, sec. 71; 23 Cyc. Law and Procedure, p. 788.

The judgment for contribution does not appear to be conditioned upon the payment by the Dairy Company of more than its fair share of the judgment rendered against both defendants.

*By the Court.*—So much of the judgment as awards judgment in favor of the plaintiff against the defendants Carl Wein-

**459a**

brenner and the Farm Bureau Mutual Insurance Company of Wisconsin for the sum of $5,517.23, together with costs taxed at $216.55, is affirmed. So much of the judgment as awards judgment in favor of the Purity Dairy Company and the Hardware Mutual Casualty Company against Carl Weinbrenner and the Farm Bureau Mutual Insurance Company of Wisconsin, is affirmed. So much of the judgment as awards judgment in favor of the Purity Dairy Company and the Hardware Mutual Casualty Company for the sum of $2,866.89 as contribution is reversed, with direction to dismiss without costs the cross complaint of the Purity Dairy Company and the Hardware Mutual Casualty Company against said defendants. So much of the judgment as awards judgment in favor of the plaintiffs against the Purity Dairy Company and the Hardware Mutual Casualty Company is reversed, with directions to dismiss the plaintiff's complaint against said defendants.

Fritz, J., dissents.

The following opinion was filed July 1, 1948:

Rosenberry, C. J. (*on motion for rehearing*). The appellant Farm Bureau Mutual Insurance Company of Wisconsin calls attention to the fact that the policy of insurance issued by it, limited coverage for injury to one person to $5,000. It also appears that in the trial court judgment was awarded against the appellant for $5,517.23, and appellant now contends that the allowance thereof was manifestly erroneous and the judgment is excessive in the amount of $517.23. No objection was made to the entry of the judgment for the full amount of the verdict in the trial court, nor was there any motion by the appellant to correct the error, nor was any question raised by appellant in its briefs or on the oral argument in this court.

It is considered that the question cannot be raised for the first time on a motion for rehearing. *Marshall & Ilsley Bank v. Stepke* (1938), 228 Wis. 39, 279 N. W. 625.

Neither the trial court nor this court at any time considered any question relating to the coverage of the policy issued by the appellant. There is nothing to reconsider. There should have been a motion either in the trial court to correct its judgment or a motion in this court to modify the mandate. No such motion was made.

*By the Court.*—Motion for rehearing denied with $25 costs in one case.