HOPE ACRES, INC., Appellant, v. HARRIS and others, d/b/a HARRIS PORT ESTATES, Respondents.*

*March 29—April 27, 1965.*

* Motion for rehearing denied, without costs, on June 25, 1965,

For the appellant there was a brief by *Sherman E. Stock* of Milwaukee, attorney, and *Mark M. Camp* of Wauwatosa of counsel, and oral argument by *Mr. Camp.*

For the respondents there was a brief by *Frank, Karl & Hiller,* attorneys, and *Myron B. Katz* of counsel, all of Milwaukee, and oral argument by *M. P. Frank.*

WILKIE, J. Six issues are presented on this appeal:

First, did the trial court err in finding that interest commenced, according to the agreement, upon F. H. A. approval of the subdivision?

Second, did the trial court err in determining that December 1, 1961, was the date of final F. H. A. approval of the subdivision?

Third, did respondents breach the agreement by refusing to convey certain lots beginning in July, 1962?

Fourth, should accrual of interest and running of time to exercise option be tolled?

Fifth, did appellant sufficiently prove damages resulting from respondents' refusal to convey lots?

Sixth, did the trial court err in determining responsibility for the sidewalk assessments?

This whole controversy arises out of the agreement of March 17th, the addendum to that agreement, and the conduct of the parties in connection with those agreements, all relating to the development and sale of Harris Port Estates and the adjoining subdivision. After a long trial to the court, findings and conclusions were entered by the court, many of which are put in issue on this appeal. Of course, in reviewing these findings of the trial court, none will be upset unless they are against the great weight and clear preponderance of the evidence.[1]

*Interest on Unpaid Balance.*

Paragraph four of the basic agreement calls for interest to be paid:

". . . on the unpaid balance of the aggregate purchase price twelve months from the date of final Subdivision approval by municipality and F. H. A. and approved by State of Wisconsin, improvements are completed and accepted by the City of Port Washington."

However, the second paragraph of the addendum provides:

"Paragraph Four in offer to purchase is amended to read that interest of six percent (6%) per annum on the unpaid balance of the aggregate purchase price from time of final subdivision approval by municipality and approved by state

---

[1] *Klapps v. American Ins. Co.* (1965), 26 Wis. (2d) 664, 133 N. W. (2d) 248; *Guinther v. Schucht* (1965), 26 Wis. (2d) 97, 131 N. W. (2d) 861.

of Wisconsin and F. H. A. approval and improvements completed and accepted by City of Port Washington. . . ."

The trial court found that the addendum controlled the commencement of interest on the purchases in the original subdivision, and that interest was to run from the time of F. H. A. approval of the subdivision and not from one year after such approval. Relying on the doctrine that qualifying phrases refer to the next preceding antecedent,[2] appellant contends that the provision relied on by the trial court pertains to the first paragraph of the addendum, which in turn deals with an option for the purchase of land in an entirely different subdivision and not to paragraph four of the agreement. However, this rule of construction cannot be invoked if "the context clearly shows the contrary."[3] That the provision in question expressly recites that, "Paragraph Four in offer to purchase is amended to read . . ." without specifically referring to the other paragraph demonstrates that a qualification of the preceding paragraph was not intended.

Appellant next contends that evidence of surrounding circumstances, practical construction by the parties, and declarations of the parties indicate that interest was to start a year after F. H. A. approval. In order to resort to this evidence, the contract must be ambiguous.[4] Had there been two provisions in the agreement, one declaring that interest was to begin a year from an event and the other requiring commencement at the time of the event, the agreement would clearly be ambiguous. But the paragraph which was inserted in the addendum specifically stated that the previous reference to the running of interest was to be amended. Thus there is nothing ambiguous about the terms of the agreement on this particular point. Even assuming

[2] *Wussow v. State* (1936), 222 Wis. 118, 267 N. W. 56.
[3] Id. at page 131.
[4] *Northwest Sand & Gravel Co. v. Schlieper* (1962), 17 Wis. (2d) 639, 117 N. W. (2d) 588.

ambiguity, the evidence in the record is insufficient to shed any light on the meaning to be attributed to the conduct of the parties.

There was testimony that respondents had demanded interest payments prior to December 1, 1961, the time from which the court ultimately found it was to have run. At least one later demand was made. This is consistent with their position that interest was to begin then. On the other hand, appellant refused to pay any interest. This is in accord with Lesperance's version of the terms. Other testimony concerning the interpretation and construction of the agreement by the parties is likewise of little value because it is either contradictory, self-serving, or both.

In arriving at its decision, the trial court placed weight on the fact that the secretary of Hope Acres, Joseph W. Restle, was not called to testify.[5] Appellant contends that this was error because Restle did not participate in the negotiation which produced the final agreement. However, the record discloses that Restle played a significant role in the discussions. Lesperance testified that the March 17th agreement which "Joe Restle had negotiated" was not acceptable to him. Lesperance added that "the strike-outs and substitutions [in the March 17th agreement] were at my direction either done by my secretary or Joseph W. Restle . . . ." There are many other similar references in the testimony to situations where Restle participated in contract discussions, both before and after its execution.

It cannot be said that the finding of the trial court is against the great weight and clear preponderance of the evidence.

---

[5] Relying on *Bowen v. Industrial Comm.* (1941), 239 Wis. 306, 1 N. W. (2d) 77, and *Booth v. Frankenstein* (1932), 209 Wis. 362, 245 N. W. 191.

*F. H. A. Approval.*

The addendum called for interest on the unpaid balance "from time of final subdivision approval by municipality and approved by state of Wisconsin and F. H. A. approval and improvements completed and accepted by City of Port Washington." The trial court found that all these conditions had been met by December 1, 1961. Appellant assails this finding in regard to the F. H. A. approval.

In the first place, appellant argues that the agreement calls for an unconditional commitment before the interest provision is even triggered. Not only does the agreement fail to expressly call for this, but according to Robert Fetherston, the assistant director of F. H. A. for Wisconsin, an "unconditional commitment" would be impossible to obtain in the present case. The agreement merely requires "approval" and in the F. H. A. vernacular, this means "acceptance."

Appellant next contends that the F. H. A. issued a subdivision report on July 1, 1961, and that compliance was not had with certain requirements contained in that report until much later than December 1, 1961. It is true that the F. H. A. noted on the report the dates the particular requirements were complied with and that many of these dates were later than December 1, 1961, but testimony showed that these notations were not designations of the exact time of compliance, but were merely affixed by F. H. A. as a matter of routine to show when they learned that the requirements had been met. Furthermore, although the date of compliance with one or more of the requirements may have been later than December 1st, there was no evidence to show that the F. H. A. approval could not have been obtained by that date if a concerted effort had been made to obtain the approval.

According to the report, a subdivision plat had been received as of August 8, 1962. Fetherston testified in effect that this date was unimportant since the F. H. A. actually had knowledge that the requirement had been satisfied—which is all the plat would show—prior to December 1, 1961.

Several separate specifications relating to utilities and street improvements were labeled "city letter" and dated as having been performed in September of 1962. The words "city letter" mean that correspondence had been received from the municipality involved stating compliance with the condition. When asked whether this was the date the things were done, Fetherston testified:

"I can't say definitely that that is the date this work was done. It might have been done prior to this, but that is the time we received our notice and our condition was satisfied so far as our local office was concerned."

Fetherston was then asked:

"Now, with this subdivision report before you, I am going to ask you a hypothetical question. Assuming an acceptable borrower, assuming compliance by the builder with F. H. A. construction standards, could Mr. Lesperance have successfully processed an application for F. H. A. insurance on or about December 1, 1961?"

Appellant's counsel objected on the grounds that the hypothetical did not include all the factors. Counsel was permitted to elaborate as follows:

"The missing factors being that all of the conditions which are required in Exhibit 5 and which were shown not to have been accomplished until after December 1, 1961, remained unsatisfied."

Fetherston then answered:

"Our office under those circumstances could have issued a firm commitment in the name of the buyer or the borrower.

Of course, before we would permit final endorsement of the mortgage note that would be the result of this commitment, we would want satisfactory evidence that the required improvements had been performed or put in, or we had assurance they were going in. In other words, we could issue the commitment for insurance but it would be predicated upon compliance with our subdivision report."

He further testified that the "city letters" are not required before the issuance of the request for the final compliance report. Appellant emphasizes Fetherston's statement on cross-examination that the final compliance inspection report could not have been issued nor a note endorsed on December 1st on the basis of the status of affairs as reflected by the July 1st report. But Fetherston had never testified that the note would have been endorsed or the final report issued on December 1st. Rather he explained that a "commitment" could have been granted by that date and the note endorsed and the report issued once the proper proofs had been filed.

Appellant also argues that the subdivision would not have been approved (accepted) because special assessments were not paid until February of 1963. In fact, however, respondents paid the assessments in three instalments, the first in December of 1961 pursuant to an arrangement with the city of Port Washington. There is no affirmative testimony in the record to the effect that there would nonetheless have been acceptance. On the other hand there is no testimony that payment in this manner would be fatal to an F. H. A. commitment.

Despite the conflicting evidence, again it cannot be said that the trial court's finding as to the date of F. H. A. approval is against the great weight and clear preponderance of the evidence.

*Breach of Contract by Respondents.*

By letter of July 11, 1962, respondent Raymond Harris informed Joseph Restle that if certain interest and principal payments were not received by July 13th, Hope Acres, Inc., would be considered in default of contract, and the contract of March 17th "will then be terminated." On July 14th Harris wrote Restle that the contract was terminated. The trial court held that the contract was not terminated by this correspondence because respondents had not given reasonable notice for payment.[6] Appellant argues that respondents' repudiation and their subsequent failure to convey lots constituted a breach. Yet appellant closes with the revelation that:

"In the instant case, repudiation of the contract by the defendants was rectified by the decree for specific performance adjudged in the trial court."

A more-accurate appraisal could not have been made. Appellant won a decree for specific performance and its position could not be improved here by a holding that there was a breach of contract by respondents.

*Option to Purchase Additional Subdivision and Tolling of Interest on Purchase of Lots in Harris Port Estates.*

Appellant was given an option by the addendum for one year from the acceptance of the improvements in the Harris Port Estates by the city to purchase lots in an adjacent land development. Having found that Port Washington accepted the improvements on December 1, 1961, the trial court determined that the option expired on December 1, 1962, but made no finding as to whether appellant had failed to exercise it.

---

[6] Citing *Buntrock v. Hoffman* (1922), 178 Wis. 5, 189 N. W. 572.

However, appellant, through Russel Lesperance, attempted by wire to exercise the option on July 13, 1962, well within the provided time period, but respondents would not convey the lots. Appellant is now desirous of obtaining the additional land. Since it was the respondents who refused to perform and since the trial court granted specific performance, the interests of justice demand that appellant be allowed a reasonable time to exercise the option.

Appellant similarly wants interest tolled from July 14, 1962, to the date the sale of parcels of Harris Port Estates is consummated in accordance with the specific-performance decree of the trial court because appellant's repeated demands for conveyance subsequent to that date fell on deaf ears. Allowing respondents to recover interest during this time permits them to profit by their delay. In all fairness, interest should be tolled on these sales.

On remand, the trial court should modify the judgment herein so as to reinstate the option and to toll the interest as herein provided and on such terms as the court shall determine.

### *Appellant's Alleged Damages.*

The trial court decided that appellant had failed to introduce sufficient evidence to prove any damages. Appellant asserts that proper proof was made in three different respects. First, a compendium of promotional, maintenance, and personal expenses was introduced into evidence without objection by respondents. At no time, however, did appellant produce evidence establishing that any of this expense was actually lost due to the refusal of respondents to convey the lots. It is impossible to glean from the record which of the expenses listed in the compendium amounted to damages and which were ordinary business outlays not connected in any

way to respondents' conduct or payments related to the sale of lots which respondents had conveyed.

Appellant relies on *Altschuler v. Atchison, Topeka & Santa Fe R. Co.*[7] and *Essock v. Mawhinney.*[8] In *Essock,* however, there was no doubt—where here there is—that the defendants had caused the damages prayed for. The only question was as to the amount of damages sustained. *Altschuler* merely stands for the general proposition that damages which arise naturally from a breach of contract or which are reasonably in contemplation of both parties at the time of the contract can be recovered. In that case there were specific damages which, on the facts, must have followed from the breach. Here appellant has failed to show that any of the expenses became damages after respondents' refusal to convey lots.

Second, appellant claims loss of profits on each of 10 lots which third parties had contracted to purchase, but which could not be conveyed because respondents refused to deliver deeds. The 10 contracts involved were between the various purchasers and the Russ Lesperance Real Estate Corporation. The trial court would not allow introduction of the contracts because they involved writings between parties who were not involved in the case.

Appellant Hope Acres, Inc., argues that an arrangement between it and the real-estate company makes appellant the real party in interest pursuant to sec. 260.13, Stats.,[9] for the purpose of recouping any loss on the contracts. But appellant has not sustained the burden of proving that it is the real party in interest. No evidence was introduced of any agreement between the two firms showing that Hope Acres

---

[7] (1913), 155 Wis. 146, 144 N. W. 294.

[8] (1958), 3 Wis. (2d) 258, 88 N. W. (2d) 659.

[9] "260.13 REAL PARTY IN INTEREST MUST PROSECUTE. Every action must be prosecuted in the name of the real party in interest except as otherwise provided in section 260.15."

had the "right to control and receive the recovery" of the proceeds.[10] The business decision having been made to treat the Russ Lesperance Real Estate Corporation as the seller to the third party purchasers, it became necessary that the real-estate company be joined in the suit as a party plaintiff in order to recover any lost profits on these contracts. The contracts were properly excluded from evidence and cannot be considered for ascertaining lost profits.

Russel Lesperance testified as to the amount of loss sustained on the previously mentioned contracts. This testimony is likewise immaterial to the issue of damages because it was not established that Hope Acres, Inc., actually suffered the loss.

Third, appellant asserts that it lost money on contracts to build houses on these 10 lots. The contracts were between the third parties and either Russ Lesperance Builders, Inc., or Award Builders. For the reasons given in the three previous paragraphs any evidence in regard to these losses was inadmissible.

*Sidewalk Assessment.*

The original judgment required respondents to pay for sidewalk improvements. After reconsideration, the trial court ordered the judgment modified to hold respondents responsible for sidewalks only to the extent that they had made arrangements with the city to do the work. If no arrangements were made, the respondents were liable only for the sidewalks installed up to the time the agreement was consummated. Both parties seek review from this portion of the judgment.

---

[10] *Marshfield Clinic v. Doege* (1955), 269 Wis. 519, 523, 69 N. W. (2d) 558; *Chase v. Dodge* (1901), 111 Wis. 70, 86 N. W. 548.

There is little evidence in the record on the whole question. In conjunction with testimony on an alleged lost sale Lesperance testified that Hope Acres "still had to supply at [its] expense the curb, gutter and sidewalk." This testimony is the only positive evidence of responsibility in the record. The agreement lacks any express sidewalk provision. Respondent Harris Port Estates was to be liable for "sewer, water, sewer and water laterals to lot line, road . . . , and gas and electric utilities." Paragraph five directed the purchaser to "pay for improvements for curb and gutter if and when required." Paragraph eleven imposed the burden on respondents to "pay all taxes and special assessments." Although the correspondence and the testimony of the city engineer establish that the cost of the sidewalks was to be assessed against either the subdivider or the owner, there is nothing to indicate if any agreement was made or assessments levied.

We are satisfied that the whole subject of responsibility for sidewalks was not given sufficient attention and that pursuant to sec. 251.09, Stats., in the interests of justice a new hearing should be held on this limited issue and new findings and conclusions and amended judgment should be entered thereon.

*By the Court.*—Judgment as modified by the trial court reversed by striking any provision therefrom pertaining to sidewalks; cause remanded for further proceedings as to sidewalks, option to purchase, and tolling of interest, such proceedings to be not inconsistent with this opinion; judgment affirmed in all other respects; no costs on this appeal to either party.

The following memorandum was filed June 25, 1965.

PER CURIAM (*on motion for rehearing*). On July 13, 1962, Hope Acres, Inc., through Lesperance, its president,

telegrammed respondent Raymond Harris to arrange a meeting to settle their accounts and for "the exercising of option as per our contract . . . , if option is to be exercised." In the original opinion, this court determined that by this wire Hope Acres had "attempted . . . to exercise the option" and directed the trial court, on remand, to "reinstate the option." It is clear that appellant tried to get negotiations on the option started. However, respondents contend, for the first time on this rehearing, that this telegram was not an effectual exercise of the option, and that, in any event, the option is void for lack of definiteness.

Generally, this court will not consider an argument raised for the first time on rehearing.[1] However, since the case is being remanded on the matter of sidewalks and in the interests of justice, for further proceedings on the option, because important questions are raised as to the validity of the option, and because there is doubt as to whether the sending of the telegram was a sufficient exercise of the option, the trial court on remand should consider these additional questions: First, was the option valid? Second, assuming the option was valid, was the option exercised by the telegram of July 13th? Third, assuming that the option was valid, but was not exercised, should appellant nonetheless be given a reasonable opportunity to exercise the option at this time, because the subsequent conduct of the respondents in repudiating the contract made it impossible for appellant to follow up the telegram and exercise the option in accordance with formal legal standards?

No other matters raised on the motion for rehearing require comment. Motion denied without costs.

[1] *Uren v. Purity Dairy Co.* (1948), 252 Wis. 446, 32 N. W. (2d) 615, 33 N. W. (2d) 213.