McDonald and others, Plaintiffs, vs. The State, Defendant.

*January 17—February 10, 1931.*

650

651

*Robert A. Kaftan* of Green Bay, for the plaintiffs.

For the defendant there was a brief by the *Attorney General* and *Adeline J. Meyer*, assistant attorney general, and oral argument by *Miss Meyer*.

FAIRCHILD, J. A contract between an individual and the State is to be construed and the liabilities of the parties under it are to be determined by the same rules as govern contracts between individuals. *Sholes v. State*, 2 Pin. 499. A contract lawfully entered into by agents of the State and another is to be carried out in good faith on both sides, and one so placed by act of the State that it becomes necessary for him to incur the burden of extra work in order to complete the job agreed upon is entitled to just compensation. *Hollerbach v. U. S.* 233 U. S. 165, 34 Sup. Ct. 553; *Christie v. U. S.* 237 U. S. 234, 35 Sup. Ct. 565.

The provisions of the contract which have controlling effect upon the questions presented upon this motion are the original estimate and the interpretation: "the estimated quantities of the work are the result of careful calculation, but are to be considered approximate only, and any item or all items may be increased or diminished up to twenty-five

per cent. (25 %) at the option of the commission and paid for at the proposal rate."

The State, calling for bids for work to be done, made the investigation and specified estimated quantities of various materials to be excavated, and required the bids to be made upon such estimates. This is termed a classified bid. Classified bids may have the effect of bringing lower and closer offers from contractors. The State sought to secure this advantage, and required bids upon such estimates with the qualification of possible variation up or down to the extent of twenty-five per cent. After the contract was entered into and the work under way, it transpired that the estimated quantity of rock, loose and solid, exceeded the estimate something like nine hundred per cent. The loose dirt was much less and the amount of loose rock and solid rock very much more. This put upon the plaintiffs the necessity of coping with an unexpected amount of labor and increase in expense which would not have been necessary had the mass of material to be removed been as the contractors were led to believe or had not varied more than twenty-five per cent. from the estimate. The section to be excavated contains of course so much matter, but the expense of excavating depends upon the nature and kind of material making up the total mass. The plaintiffs were called upon to remove less earth than was agreed, with which was mixed a quantity of rock considerably in excess of the estimated quantity.

The testimony is to the effect that the earth to be excavated is always mixed with loose and solid rock. The price per cubic yard for earth excavation is based upon the amount of loose and solid rock mixed with it. The expense increases when the quantity of loose and solid rock increases.

In *Hollerbach v. U. S., supra,* a similar agreement is considered with relation to the building of a dam:

"In paragraph 33 the government sets forth with particularity a description of the old dam, its length and width,

and it was there added: 'The dam is now backed for about fifty feet with broken stone, sawdust, and sediment to a height of within two or three feet of the crest,' etc. The specifications provided that the excavations behind the dam must be to the bottom. In the light of this specification, turn to the finding of fact, and we learn that the claimants, as they proceeded with the work, found that the dam 'was not backed with broken stone, sawdust, and sediment as stated in paragraph 33 of the specifications,' and below seven feet from the top to the bottom there was a backing of cribbing of an average height of 4.3 feet of sound logs filled with stone. Obviously this made it much more expensive to do the work than if the representation inserted by the government in the specifications of its own preparation had been true and only the character of material had been found which the specification unequivocally asserted was there."

"A government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument. In paragraph 33 the specifications spoke with certainty as to a part of the conditions to be encountered by the claimants. True the claimants might have penetrated the seven feet of soft slushy sediment by means which would have discovered the log crib work filled with stones which was concealed below, but the specifications assured them of the character of the material, a matter concerning which the government might be presumed to speak with knowledge and authority. We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it rather than upon the claimants must fall the loss resulting from such mistaken representations."

The positive declaration by the State that the variation will not exceed twenty-five per cent. of the quantities estimated was binding upon the State. It was relied on by plaintiffs, and the loss, if any, arising by reason thereof must be borne by the State.

The evidence amply sustains the answers by the jury to the questions of the special verdict with the exception of the

answer to question (1), which, as a matter of law, must be answered "Yes." Questions (2) and (3) are answered "Yes" by this court, and question (5½) is withdrawn. This leaves to be determined on the re-reference only the fair amount to which plaintiffs are entitled for moving 11,966 cubic yards of earth containing 945 yards of loose rock and 442 yards of solid rock, over the agreed price of moving 13,182 cubic yards of earth containing 114 plus twenty-five per cent. cubic yards of loose rock and fifty-seven plus twenty-five per cent. cubic yards of solid rock, and the amount due because of the additional work and expense in moving 2,453 cubic yards of "borrowed dirt" by reason of the fact that the specifications call for less loose and solid rock than was actually found.

The state highway commission paid out of money owing to plaintiffs to one who filed a transcript of judgment against them the sum of $530.28. As to this matter the facts are: John Ross, a judgment creditor, filed with the highway commission a transcript of the docket entries, that is a transcript of the judgment in the municipal court of Oneida county, Wisconsin, of a judgment in his favor against the plaintiffs, for the purpose of collecting such judgment out of the funds owed the plaintiffs from the State. Sec. 304.21, Stats., provides that whenever a person recovers a judgment and the judgment debtor shall have money due from the State, the judgment creditor may file a certified copy of such judgment with the secretary of state, and that it then shall become the duty of the proper officers of the State, after the expiration of thirty days from the date of filing the certified copy of judgment, to pay to the owner of such judgment such sum as at the time of said filing is due and thereafter until said judgment is fully paid to pay to the owner of said judgment such sum or sums as may at any time be due from the State, and further provides: "that if any such judgment debtor shall have appealed from said judgment, at the date

of the filing of said certified copy of said judgment, or if the time for appealing has not expired at the date of said filing, then and in either such case, if the said judgment debtor shall within thirty days from the date of filing of said certified copy of said judgment, file with such secretary . . . an affidavit that an appeal has been or will be taken from such judgment within the time prescribed by law, such payment shall not be made until the final determination of such appeal, and if such affidavit is not filed, payment made as herein provided shall be a final discharge of any liability of the state. . . ."

The plaintiffs contend that the defendant should not have paid this judgment because a transcript of judgment was filed rather than a certified copy of a judgment. A transcript of a judgment for most purposes is equal to a certified copy of the judgment, and common practice has made them, for the purposes of this record, equivalent.

While the precise words "certified copy" are used in the statute, they are not so used as to exclude that which is in law and practice equal to a certified copy. The filing of a transcript in an adjoining county has the effect of a judgment so far as liens on real estate and the right to issue execution are concerned.

It has been the practice of the secretary of state, since the enactment of this statute, to pay judgments upon the filing of a transcript of the judgment, and to require a certified copy of the judgment rather than a transcript would give no additional protection to the judgment debtor. To require it would be to place a construction upon the statute requiring more than is necessary in the case of filing a judgment in an adjoining county and would be ruling out what in effect is a certification of judgment.

There is suggested by the facts in the case and the method followed in the payment of the judgment a question of statutory construction. The legislature intended to protect those

having an interest arising under the judgment. Did the legislature intend to permit the debtor's property to be disposed of without notice to him that a claim had been filed against him and giving him an opportunity to file the affidavit required by this section? When the case is reported and the questions resubmitted are answered, the construction of this statute, together with the proper judgment to be entered upon all facts determined, can then be considered.

*By the Court.*—The motion of the plaintiffs is granted as indicated, and the case is re-referred for the purpose of assessing damages for extra costs suffered by plaintiffs because the specifications referred to were not approximate.