STATE EX REL. LATHERS, Respondent, vs. SMITH, State Treasurer, Appellant.

*May 21—June 25, 1941.*

294

*Herbert C. Hirschboeck* of Milwaukee, special counsel, for the appellant.

For the respondent there was a brief by *Sanborn, Blake & Aberg, Ernest H. Pett,* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. Pett* and *Mr. Conrad.*

A brief was also filed by the *Attorney General* and *James Ward Rector,* deputy attorney general, as *amici curiæ.*

WICKHEM, J. Since this matter comes up on demurrer, it is necessary to analyze the pleadings of the parties. It may be stated at this point that several exhibits omitted from the petition, consisting of the original and supplemental contracts involved here, standard specifications of the state highway commission, and other papers, were by stipulation included in the record. This was not done by formal amendment to either of the pleadings, but since the question is whether upon the whole record the demurrer should have been sustained, and since the exhibits are stipulated into the record, we shall simply consider them as facts admitted by the demurrer.

The petition, after identifying defendant as the duly elected treasurer of the state of Wisconsin, sets forth that on May 16, 1940, petitioner signed a contract with the state of Wisconsin acting through the state highway commission whereby he undertook to perform certain grading operations involved in the construction of State Trunk Highway No. 30. This

contract was approved by the state highway commission on May 27, 1940, by the state chief engineer on May 28, 1940, and by the governor of the state on May 29, 1940. It is alleged that on October 11, 1940, a supplemental contract was entered into between petitioner and the state of Wisconsin through the highway commission amending the original contract to the extent that the contract unit price for rock excavation was changed from $1 per cubic yard, as provided by the original contract, to thirty-five cents per cubic yard. Allegations follow to the effect that the original contract was executed only after proper bids were made, that petitioner entered upon the construction project, and that at the time of the petition he had completed over ninety-five per cent of the work. It is alleged that under the terms of the contract petitioner is entitled to a partial payment from the state of Wisconsin in the sum of $16,600. It is alleged that standard specifications for road construction of the state highway commission are a part of the original contract between the petitioner and the state, and that section 109.06 of these specifications provides in substance that each month the engineer will make an approximate estimate in writing of materials in place complete and the amount of work performed and the value of this work at contract unit prices. It is provided that fifteen per cent of this amount is to be retained by the commission until the completion of the contract in an acceptable manner, and the balance certified by the commission for payment unless the balance amounts to less than $500. When not less than ninety-five per cent of the work has been completed, the specifications provide for a semifinal estimate as to the amount due from which the commission is required to retain a sum equal to not less than twice the contract value or cost of work remaining to be done. It is alleged that prior to December 27, 1940, the state highway commission, pursuant to the foregoing specifications, made twelve estimates of partial payments due to petitioner. All of these estimates

were audited by the secretary of state and paid by defendant. It is alleged that on or about December 23, 1940, the state highway commission prepared estimate No. 13 of the amount of partial payments due to petitioner, and the result of this estimate was a recommendation for the payment of $16,600. The state highway commission thereupon issued a voucher signed by its chairman certifying that petitioner was entitled to $16,600 as a partial payment. On December 23, 1940, this voucher was presented to the financial secretary of the governor and indorsed with his approval. On December 27, 1940, the voucher was presented to the secretary of state for audit. On February 12, 1941, the secretary of state audited and allowed the claim in the sum of $16,600. On February 12, 1941, the secretary of state issued a warrant in the form of a check or draft on defendant in favor of petitioner and transmitted to defendant a copy of the voucher together with the original warrant or check for countersignature and payment. On or about February 18, 1941, defendant countersigned the check and delivered it to the state highway commission for delivery to petitioner, but at some time subsequent thereto he recalled the check and has since persisted in refusal to countersign or deliver the warrant or check to petitioner. A formal demand on defendant on February 24, 1941, is alleged, together with defendant's refusal. Various allegations which amount to conclusions of law with respect to the powers of the state highway commission and the duties of defendant are added to the petition, and the peremptory writ is prayed for.

The return denies that a supplementary contract was made between petitioner and the state of Wisconsin as alleged in the petition. The return sets forth that on October 11, 1940, the state highway commission approved the so-called "supplemental contract" signed by petitioner and dated October 2, 1940, which in form purported to change the original contract in several particulars by changing the classification

of 54,575 cubic yards of estimated excavation from common excavation, which had a contract price of fifteen cents per cubic yard, to rock excavation, which had a contract unit price of $1 per yard; that the supplemental agreement applied the contract unit price for rock excavation to 5,025 cubic yards of the total amount involved and a new unit price of thirty-five cents per cubic yard for the remaining 49,550 cubic yards. Defendant further alleges that "as he is informed and believes, the 54,575 cubic yards of excavation thus reclassified was not rock excavation but was common excavation according to the definitions in section 206 of the standard specifications" referred to in the original contract; that "the character of the material comprising such 54,575 cubic yards is designated in the cost analysis appended to the so-called supplemental agreement as 'hardpan (rock excavation)' but that by section 206.01 (b) of said standard specifications, 'hardpan' was and is classified as 'common excavation.'" It is alleged that by the original contract petitioner was not lawfully entitled to payment for excavating the 54,575 cubic yards at any unit price other than that prescribed for common excavation, namely, fifteen cents per cubic yard, and that the supplemental agreement attempting to change this unit price was and is void. It is alleged that the voucher presented to defendant for payment is void for the same reason. Defendant further sets up that while the original contract was duly executed with the approval of the state chief engineer and the governor, as required by sec. 15.79, Stats., the so-called "supplemental agreement" upon which petitioner relies involves an expenditure of more than $1,000, and, not having been approved in writing by the state chief engineer or the governor, is void for failure to conform to the provisions of sec. 15.79; that petitioner's claim is void under the same section because not audited by the state chief engineer. Defendant further alleges that the powers of the state highway commission are subject to the limitation that all contracts must be based on competi-

tive bidding with certain exceptions not applicable here, and that if any provisions of the original contract purport to authorize the making of a supplemental agreement or in any way to make valid the change, it constitutes an unlawful delegation of authority and is unlawful and·void. It is alleged that while in form petitioner's voucher was audited by the secretary of state, the latter considered his duty in the premises to be purely formal, and that in effect he abdicated his constitutional functions. In summary, petitioner claims that, having entered the execution of the contract and having encountered considerably more rock excavation than the original estimates called for, he entered a supplemental agreement which was authorized by and a part of the original contract and which had the effect of reducing the cost to the state of the extra rock excavation except to the extent that this additional type of excavation did not become a major item in the contract; that it was within the power of the highway commission, through its engineer, to enter such a supplemental contract, and that this type of contract did not require the approval of the state chief engineer or the governor; that the net effect of it was to reduce the contract price for rock excavation; that by the terms of the specifications the classification and estimates of material are functions of the engineer designated by the highway commission, and that his determination is final and is binding on defendant state treasurer in the absence of fraud or gross error. Defendant, on the other hand, takes the position that since all bids must be competitive, it would be destructive of the policy of the statutes making this requirement and contrary to their intent that the highway commission or its employees or deputies or agents could make a contract with the successful bidder changing the unit price applicable to various types of excavation; that it appears in the estimates of the engineer that the material making up the 54,575 cubic yards involved in this voucher was hardpan and that by the specifications and con-

tract hardpan is common excavation; that from the record it therefore appears that the engineer has not exercised a professional determination as to what materials constitute rock excavation and what materials are common excavation, but that he has arbitrarily changed hardpan, which the contract specifically puts into the classification of common excavation, into rock excavation, contrary to the specifications in the contract, and thus has laid the foundation for a supplemental agreement which changes the unit price applicable to common excavation; and that this is beyond his powers and destructive of the whole system of competitive bidding.

For convenience, we shall dispose of the formal objections to the supplemental contract first. We do not deem well taken the contention that the supplemental contract was void because not approved by the governor or the state chief engineer. Sec. 84.06, Stats., requires, in substance, that all highway improvement contracts which the highway commission has power to execute must be executed by contracts based on bids with certain exceptions not necessary to discuss. The section contains the clause "contract so awarded shall be entered into between the state and the contractor and shall be entered into on behalf of the state by the commission, subject to the provisions of" sec. 15.79, Stats. Sec. 15.79 relates to the approval of contracts by the engineer and governor, and prescribes that every contract for construction work to be done for the state or any department or commission thereof shall before becoming effectual for any purpose have indorsed thereon in writing the approval of the state engineer, and in the case of contracts involving the expenditure of $1,000 or more, the approval of the governor. The state chief engineer should not be confused with the highway engineer. He is the head of a bureau in the executive department, and his office is created by sec. 15.77. He has no part in the supervision of highway construction. Sec. 15.77 (1) provides that the state chief engineer shall be authorized "to take charge of

and supervise all engineering or architectural service or construction work performed by, or for, the state, or any department, board, institution, commission, or officer thereof, *except the state highway commission."*

It is our conclusion that a supplemental agreement such as was entered into in this case is not an original independent contract governed by the requirements of sec. 15.79, Stats. The rules and specifications of the highway commission which constitute a part of all highway contracts contain in section 101.16 a provision that the contract of the parties shall include supplemental agreements executed pursuant to its provisions, and the original contract here approved by the governor and the state chief engineer contained a provision that supplemental agreements pursuant to its provisions should constitute a part of the contract so approved. It appears from the provisions of the specifications and contracts that this type of agreement is entered only in cases where by reason of alteration of plans or unforeseen contingencies contract items are increased in excess of certain specified percentages of the entire contract cost. They are primarily for the protection of the state in order that the unit price as applied to much larger quantities than estimated may not run the cost of the project into unreasonable sums. They have been discussed and assumed to be valid in *McDonald v. State,* 203 Wis. 649, 235 N. W. 1, and *Wussow v. State,* 222 Wis. 118, 267 N. W. 56. The supplemental contract is simply a modification of the original contract or, more specifically, an adjustment of compensation to the contractor for particular items of work. It is not a contract to do work for the state but one in respect of the compensation for work which the contractor is already obligated to do for the state. It has never been considered administratively that such contracts required executive approval or approval by the state chief engineer, a fact of which we are entitled to take judicial notice. While this is not conclusive, it is an important makeweight in the construction of

statutes where the statute is open to construction, as we think sec. 15.79 is. Aside from this, it appears to us that defendant's argument proves too much. If the supplemental agreement must stand on its own footing as an independent contract for construction work, then it must be let by competitive bids. This, however, could not be done since a contractor was already engaged upon the project and not only obligated but entitled to do the work. The supplemental agreement is not one to do work for the state. It is simply a modification of the compensation features of a partly executed contract for highway construction. It is, therefore, not such a contract as is described in sec. 15.79, and does not require the approval of the governor or that of the state chief highway engineer.

We think there can be no serious question as to the power of the state highway commission to provide for such supplemental agreements in its specifications and its contracts for highway construction. This is simply an important detail in the regulation of highway contracts which is and should be, committed to the discretion of the commission. It does not, as is intimated by defendant, create the opportunity for raising to exorbitant levels the cost of work under these contracts, nor does it destroy the effectiveness of the competitive bidding system. It is a necessary provision in the economy of road construction. It certainly is within the discretion of the commission to require bids at unit prices for the excavation of different types of material in the process of building a highway. It is within the field of judicial notice that while within certain limitations the respective amounts of materials of varying difficulties of removal may be estimated, the estimates may miss the mark widely in spite of adequate preliminary investigations. If a particular bid is made upon a certain unit price for rock excavation and the amount is greatly underestimated, the state will have to pay an exorbitant price for completion of the project unless by supplemental agreement it may change the unit price. If the amount of rock

excavation is overestimated, the state will, of course, have no occasion to make supplemental agreements because the lower unit price for common excavation will apply. Hence, the agreements are primarily for the protection of the state and appear to us to be perfectly reasonable and proper. If these agreements may not be provided for, the state must abandon the unit cost system and call for bids on the project as a whole, letting the contractor take his chances on what type of material he would find in the project. Under these conditions, and with the uncertainties necessarily involved in estimates, the bids of responsible contractors would have to be substantially higher, to the detriment of the state. If, however, the state without reserving the right to make a supplemental contract should agree to pay unit prices for all materials encountered that had a high unit price for removal, it would carry the full risk of prohibitive cost. We see no reason why as an incident to its supervision of highway work and contracts the state highway commission may not provide in its specifications for such supplemental agreements as are here provided for and enforce them after they are made. That there are, or should be, limitations on this power may reasonably be argued and perhaps may be true, but the limitations are not exceeded in the type of supplemental agreement involved here. The provisions of section 104.03 of the specifications are that the engineer may make such alterations in the plans or quantity of work as may be necessary and that the quantities of any items of work may vary from the quantities scheduled on the plans and in the proposals due to unforeseen or other conditions. These are the only conditions under which supplemental agreements are provided for, and this is further limited to situations where the alterations involve an extension or shortening or lengthening of the project or an increase of more than twenty-five per cent of the total cost calculated from the original proposal quantities and the contract unit prices or an increase of more than twenty-five per cent or decrease

of more than fifty per cent in the quantity of any one major item. It is provided that supplemental agreements for minor items which have increased to become major items will be required for and shall cover only the quantity having a contract value and determined from the contract unit price in excess of six and one-fourth per cent of the total original contract price. It is specified that a major contract item shall be construed to be any item the total cost of which is equal to or greater than five per cent of the total contract cost computed on the basis of the proposal quantity and the contract unit price. Further limitations upon supplemental contracts occur in the specifications but need not be detailed here. We are of the view that there was ample power in the commission to provide for supplemental agreements, at least in the contingencies specified. It is unnecessary to carry our conclusions any further than this.

Petitioner contends that the state treasurer has no standing in this case to question the classification of materials under the contract; that by the provisions of sec. 82.02 (9), Stats., the state highway commission is empowered to take charge of the construction under highway contracts, to make audits for payments under these contracts, and to delegate to its highway engineer authority on its behalf to classify excavations under this contract. Section 206.02 of the specifications provides that the classification of "roadway and drainage excavation as 'common excavation' or 'rock excavation' will be determined by the engineer as the work is opened up and performed. From time to time as the work progresses, and at least once each month, the engineer will, in writing, notify the contractor or his authorized representative on the work of the amount or the limits which will determine the amount of material to be classified as rock excavation." It is provided that if the contractor does not protest this classification within fifteen days after notification, he waives his right to object. Under these specifications and under section 206.02

(c) hereinafter quoted and considered, we entertain no doubt that the engineer's classification of materials as rock or common excavation is final and conclusive in the absence of fraud or gross error. If it were to appear that the engineer classified ordinary sand as rock, a case of fraud or gross error would be established. Except for such a situation, the determination of the engineer may not be put in question by the state treasurer. This would be true even though the engineer had classified as rock excavation what another engineer might have classified differently.

From the fact that the determination of the engineer must not be fraudulent or grossly erroneous, it follows that whatever his motives, he may not by purely arbitrary changes in classification pave the way for a supplemental agreement that in effect increases the agreed compensation for common excavation. The question is whether defendant has succeeded in raising such an issue. It appears in the return,—

"Defendant alleges that, as he is informed and believes, the 54,575 cubic yards of excavation thus reclassified was not rock excavation but was common excavation according to the definitions in section 206 of the standard specifications referred to in contract No. 4."

This allegation is insufficient because it fails to set up fraud or gross mistake upon the part of the engineer. Whatever issue is raised by this paragraph is plainly immaterial. The defendant continues, however, with this allegation:

"That the character of the material comprising such 54,575 cubic yards is designated in the cost analysis appended to the so-called supplemental agreement as 'hardpan (rock excavation).'"

Turning to the cost analysis, which is by stipulation made a part of the record, we find the material involved in the supplemental agreement variously referred to as "rock excavation (hardpan)" or "hardpan (rock excavation)." Since hardpan is defined as common excavation in the specifications

in the contract, defendant claims that the record demonstrates that the engineer has arbitrarily classified as rock that which he himself considers to be and actually labels hardpan. Defendant's contention is that this shows gross error or usurpation of power by the engineer and not a good-faith exercise of judgment as to what constitutes rock excavation or that the material involved in the supplemental agreement is within that classification.

This contention requires an analysis of the standard specifications. Section 206.02 (c), standard specifications, provides:

"Rock excavation shall include all hard, solid rock in ledges, *bedded deposits and unstratified masses* and all conglomerate deposits *so firmly cemented as to present all the characteristics of solid rock; which material is so hard or so firmly cemented that in the opinion of the engineer it is not practicable to excavate and remove same with a power shovel except after thorough and continuous drilling and blasting.* Rock excavation shall also include all rock boulders necessary to be removed having a volume of . . .

"The classification of rock excavation shall not apply to old plain or bituminous bound bases or surface courses of macadam, gravel, broken stone or shale, and such materials will be classified as common excavation.

"Power shovels as referred to above shall be taken to apply to a modern power shovel of not less than three-quarters cubic yard manufacturers. rated capacity, having adequate power and being in good running condition in the hands of an experienced operator."

From this definition, and particularly from that portion of it which we have italicized, it appears that rock excavation includes not only rock in the form of solid rock and conglomerate but bedded deposits and unstratified masses so hard and firmly cemented as to present all the characteristics of solid rock and in the opinion of the engineer to be impracticable of excavation with a steam shovel except by a process of continuous drilling and blasting. There would be no point in

making the impracticability of removal by a steam shovel without blasting a decisive test if rock excavation applied only to solid rock or conglomerate. We conclude that any deposit or mass so firmly cemented that in the opinion of the engineer it may only be removed by the above-described methods may be classified as rock excavation. Under the same conditions and with the same limitations this may include certain hardpan which is a cemented or compacted deposit. We are fortified in this conclusion by the exclusions contained in this section of the specifications.

This provision excludes from rock classification without respect to the engineer's opinion as to practicability of removal by the unaided use of a steam shovel, macadam, gravel, and other materials that cannot properly be classified as rock. The exclusion would be wholly unnecessary if rock excavation included only solid rock or conglomerate. Significantly, hardpan is not specifically excluded. We conclude that the use of the label "hardpan" in the cost estimate attached to the supplemental contract does not indicate that what is common excavation under the specifications was arbitrarily classified as rock excavation. It sufficiently appears from the supplemental contract and its attached exhibit that in the opinion of the engineer the material involved was a deposit or mass that called for continuous drilling and blasting before it was practicable to remove it by steam shovel. No allegation of fraud or gross error having been made, this determination is not successfully challenged by any allegation in defendant's return. Since, as we hold, it was within the power of the engineer by the exercise of this opinion to classify certain hardpan as rock excavation, no error in interpretation of the specifications of the contract appears. For this reason we hold that the allegations of the return do not raise any issues with respect to classification that defendant has standing to raise.

It is next contended that the petitioner's demurrer admits allegations in the return that the secretary of state signed the

voucher of the state highway commission upon advice that his function as auditor of the voucher was purely formal and ministerial and not a verification of the estimate or of the right to the payment certified. This record is claimed to show that the secretary of state has not audited the claim but has in fact abdicated the auditing function imposed upon him by sec. 2, art. VI, Wisconsin constitution. It is claimed that the legislature may not constitutionally delegate power to the highway commission when the constitution casts this duty upon the secretary of state. The contention cannot be sustained. There was presented to defendant the voucher issued by the state highway commission with the following notation upon it:

"February 12, 1941.
"Audited and allowed in accordance with the provisions of section

. . .
20.49-4 Construction ...................... $16,600.00
. . .
of the Wisconsin statutes and certified to the state treasurer payable from the general fund.

"FRED R. ZIMMERMAN,
"Secretary of State as Auditor."

From this it conclusively appears that the secretary of state has audited petitioner's claim and an allegation as to the reasons which motivated him raise a wholly immaterial issue.

It is next contended that in any event the claim involved in this case was not audited and approved by the state chief engineer as required by sec. 15.79, Stats. It may be observed that the constitutional point just invoked by defendant to the effect that auditing is a nondelegable function of the secretary of state would, if granted, determine this contention adversely to defendant. We deem it unnecessary to consider this question and shall determine the matter upon the statutes. Sec. 15.79, after providing that every contract for engineering, architectural, or construction work to be done

for the state or any commission thereof shall have the approval in writing of the state chief engineer and in cases involving the expenditure of $1,000 or more the approval of the governor, further provides:

"And no payment or compensation for work done under any contract shall be made unless the written claim therefor shall be audited and approved by said state chief engineer."

Sec. 84.06 (1), Stats., governing bids and contracts for highway construction and containing various directions for letting bids and entering the contract, provides:

"The contract so awarded shall be entered into between the state and the contractor and shall be entered into on behalf of the state by the commission, subject to the provisions of section 15.79. Every such contract is excepted from the provisions of sections 15.26 to 15.40 and section 15.81."

Defendant claims that whether the supplemental agreement needs the written approval of the governor and state chief engineer as a prerequisite to its validity, it is in any event subject to the audit provisions heretofore quoted because it is expressly made so subject by sec. 84.06 (1), Stats. Administrative practice to the contrary is disposed of by pointing out that the specific provision subjecting state highway contracts to the provisions of sec. 15.79, as well as freeing them from the operations of secs. 15.26 to 15.40 and 15.81, was enacted by ch. 393, Laws of 1937, and that whatever contrary administrative practices antedated those enactments were outlawed by the enactment. Petitioner relies upon sub. (4) of sec. 84.06. This provides:

"The commission may provide for the necessary and adequate inspection of each piece of work to insure its proper performance. All indebtedness incurred in accordance with the provisions of this section for any highway improvement shall be paid out of the funds available for the improvement subject, if federal aid is utilized, to any applicable federal requirement or regulation. *Such payment shall be made only*

*on the order of the commission, from which order the secre-
tary of state shall draw his warrant upon the general fund of
the state in favor of the payee and charge the same to the
proper appropriation."*

· Sec. 20.49 (10), Stats., provides:

·— "Payments from the appropriations made by subsections
(1), (2), (3), (4) [relating to state trunk highways], (5),
(8) and (9) hereof, shall be made only on the order of the
state highway commission from which order the secretary of
state shall draw his warrant upon the general fund of the
state in favor of the payee and charge the same to the proper
appropriation."

· Petitioner points out that neither of these subsections refers
to sec. 15.79, Stats., and that sec. 15.77 (1) vests the power in
the state·chief engineer to take charge of and supervise all
engineering, architectural, and construction work performed
for the state or any commission except the state highway com-
mission which by sec. 82.02 is vested with full charge of the
expenditure of state and federal aid for the improvement of
public highways. We are of the view that petitioner's posi-
tion is sound. The specific exclusion of the state chief en-
gineer from control and supervision of highway contracts,
the specific vesting of this power in the highway commission,
:and the provisions both in secs. 84.06 (4) and 20.49 (10)
that payments on highway contracts shall be made only on
the order of the commission, and that from·this order the
secretary of state shall draw his warrant,·make it clear to us
that the requirement in sec. 84.06 (1) that the contract shall
be entered into subject to the provisions of sec. 15.79, merely
relates to the initial execution of the contract and to its ap-
proval by the state chief engineer and governor. Such a
construction gives a coherent statutory scheme consistent
with general administrative practices and avoids conflicts that
would require application of the rules of implied repeal.

*By the Court.*—Judgment and orders affirmed.

Fritz, J., dissents.