### FURTON et al. v. CITY OF MENASHA.
#### Civ. No. 1130.

District Court, E. D. Wisconsin.

May 7, 1947.

J. Kaiman and Wm. B. Rubin, both of Milwaukee, Wis., for plaintiffs.

Melvin F. Crowley, of Menasha, Wis., and Harvey C. Hartwig, of Milwaukee, Wis., for defendant.

STONE, District Judge.

This action was commenced by the plaintiffs, copartners of Menominee, Michigan, against the defendant, a municipal corporation situated in Winnebago County, Wisconsin, to recover the sum of $100,994.71. that plaintiffs allege they suffered by reason of misrepresentations by the defendant contained in the plans and specifications of their contract with defendant, entered into on December 17, 1941.

Plaintiffs are contractors and they agreed by the terms of their contract to construct' according to the plans and specifications, a pre-settling basin for defendant to be used in connection with the operation of its water utility in the City of Menasha.

The work required of plaintiffs by the terms of the contract included the excavation, to a depth of approximately 7 feet of an area to be used for said basin, three-fourths of which was surrounded by water and the dimensions of which were as follows: 724½ feet long on one side; 732 feet on another side next to an outlet creek leading into Lake Winnebago; 150 feet on the side next to the lake shore; and 1,000 feet on the remaining side next to a dredged channel.

Plaintiffs claim is for alleged extra and additional services rendered and expenses incurred by them under circumstances which they contend made defendant liable therefor.

Their claim is comprised in part of lien claims amounting to $23,886.22, and one for rental of machinery and equipment in the sum of $63,414.22.

The misrepresentation is alleged to appear in the plans and specifications as to the depth at which a solid layer or floor of rock underneath the area to be excavated would be found at a uniform level, which would permit plaintiffs to use their heavy machinery, trucks and equipment thereon in the excavation of the basin.

Plaintiffs claim they made and submitted their bid to the defendant on the assumption that there was such a solid foundation or layer of rock at the elevation designated on the plans as "rock"; that after they had performed a substantial part of the contract they discovered that the rock base did not exist and that by reason of is non-existence they were compelled to use heavier and additional equipment, and to erect portable mats of blocks and timber to support their machinery and trucks. They also contend that defendant's engineer ordered them to perform the additional work and to incur the additional expense.

The defendant denies that the contract contained any such warranty or representation, or that its engineer was authorized to or did authorize plaintiffs to perform the alleged additional work or incur the alleged additional expense. It asserts that it paid plaintiffs all that was due them on the contract except the sum of $14,603.57 which they retained. That $10,103.37 of said sum represented the 15% retained by it pursuant to the contract which it now claims as an offset against the cost of completing the project and the payment of the lien claims.

The project was not completed prior to the commencement of this action and the defendant has had no use of the settling basin.

Most of plaintiffs' machinery and equipment on this project was used and second hand when they purchased it. The rental charge entered on their books in the sum of $63,414.22, and made a part of their present claim against defendant, was not a cash outlay or expenditure. It was shown as a bookkeeping entry in which plaintiffs charged themselves for rental of machinery and equipment owned by them and used by them on this project, which rental charge in some instances exceeded many times the original cost of the tractors or other machinery.

Plaintiffs make no claim that the area to be excavated was enlarged or changed in any manner by supplemental plans or specifications, or that they were required to remove a larger quantity or different quality of material than originally contemplated by the contract. They do assert that there was some quicksand removed. The proof discloses that the amount of quicksand so removed was negligible and of no significance.

Plaintiffs contend that when they discovered the non-existence of the rock base, the defendant's engineer, orally, but not in writing, directed them to continue the performance of the work. This is denied by the engineer, and the conduct of the plaintiffs gives support to the engineer's testimony that he at no time authorized them to perform the alleged extra work in writing or otherwise.

It appears from the evidence that plaintiffs discovered the absence of the "rock foundation" on March 6, 1942, but failed to notify the defendant of their alleged claim until 11 months thereafter, although from the very outset and throughout the period of the operation on this project, they were in financial difficulties and badly in need of additional funds to carry on the work. They never included in their monthly estimates thereafter, any claim for additional or extra compensation for excavation of the basin. The contract provided that all claims for extra work must be submitted not later than the 5th day of the next month. Their claim was not filed until April 9, 1943, which was 13 months after they discovered the alleged misrepresentation.

Each monthly report showed the amount of work in each category during the preceding month and the amount approved for payment was based upon the work performed during the preceding month as shown by the estimates approved by the contractor. Plaintiffs submitted to defendant 13 monthly estimates without mention or reference in any of them to the claim now in suit. The estimates stated the full and complete claim of plaintiffs up to the date of each statement. Apparently at no time during that period did plaintiffs entertain any thought that it had any such claim against the defendant.

From October 1, 1942, to January 1, 1943, the estimates show $1,556, $1,300 of which was for excavation, $256 for other work under the contract, and nothing for extras. It then showed the cost of excavation to

that date as $27,898.19. It appears to this court that the claim in issue is frivolous and without merit. It was not presented to defendant until after the Commission had declared plaintiffs in default on their contract. Its filing was undoubtedly due to that "sober second afterthought". There were seven extras approved and paid for by defendant. All were based upon written communications from defendant's engineer authorizing the extra work, except as to two minor items.

The engineer's authority was limited by the terms of the contract. He could authorize additional work only in writing. There is no evidence of any written order made by the defendant or its engineer authorizing plaintiffs to do this alleged additional work.

There is no evidence or proof of any waiver by defendant of the necessity for a written order from the engineer for extra work as a condition precedent to the payment for additional services.

The contract was signed December 7, 1941. Plaintiffs undoubtedly intended to promptly commence the excavation work so as to take advantage of the winter weather. Unfortunately they were unable to start until January 21, 1942, when they obtained the performance bond. They lost a month and a half of weather conditions valuable and precious to a contractor in excavating this type of soil. Some time after starting the work they were confronted with seepage and unusually heavy rains resulting in washouts and breakage of the cofferdam causing the overflowing of water into the basin with its resultant hindrance that added additional work and expense to the project.

The failure of the plaintiffs to complete the contract started with their bid of $78,000, which was undoubtedly too low. The engineer's estimate was $63,000, the other bids on this project were $106,161, $114,781 and $115,938. When the bids were submitted and the Commission discovered their wide range they were somewhat concerned and promptly conferred with one of the plaintiffs who had submitted the bid, making inquiry as to whether he had examined the site, made the proper investigations, understood the contract, and if plaintiffs could perform the work required thereby for the amount of their bid. He advised the Commission that plaintiffs could and would perform all the conditions and terms of the contract for the amount of their bid. The floods, rain, washout, breakage of the dyke, delay in starting, poor equipment and inadequate financing all contributed to plaintiffs' failure to perform the contract within the period fixed for completion.

On February 2, 1943, seven months after the date fixed for completion of the project, plaintiffs were declared in default on their contract by the Commission and thereafter their bonding company took over the performance of the contract with one of the plaintiffs supervising the work. On June 29, 1943, the bonding company discontinued the performance of the contract.

The "rock" was indicated on the plans as incidental to the erection of the foundation for the baffle walls, headhouse and dykes.

■ Plaintiffs were experienced contractors with a wide and varied experience in excavating in the states of Michigan, Illinois, Indiana and Wisconsin, dating back to 1927. They were familiar with contracts, bidder's proposals, plans and specifications. They knew what duties and responsibilities the contractor assumed when he entered into a contract such as the one in issue. They made no inquiry before the signing of the contract of the engineer as to whether he had made any borings in the basin area. They had full opportunity to determine conditions for themselves and they were required to do so by the terms of the contract, which obligated them to satisfy themselves by personal examination of the location of the project and as to the actual conditions and requirements. They warranted by their contract that they had done so when they submitted their bid to the defendant. Their investigation may or may not have been adequate. They, however, assumed that risk. They cannot now escape from the terms of the contract nor ignore its plain provisions. Under its terms plaintiffs assumed the responsibility of meeting whatever conditions might arise.

■ If plaintiffs deemed such a base essential and necessary for the performance of their contract, then it was their duty to

carefully explore that region by boring and probing throughout the area, which they failed to do. They had no right to assume from the plans that a solid ledge of rock existed at a uniform level over the entire area at an elevation of 87.2+. Defendant made no such representation to them.

■ Plaintiffs' claim against defendant can only be allowed if it is sustained by the written contract. The wording of the contract herein is plain and unambiguous, defining clearly the final understanding of the parties and their rights and duties. The provisions of the contract material and the proposal of the plaintiffs are set forth in the footnote.[1] Its terms and provisions cannot be avoided by plaintiffs because the pecuniary result which the contract has produced has not come up to their expectations.

In the cases where the courts allowed recovery on claims such as the one in issue,

---

[1] Instructions to Bidders

"Bidders must satisfy themselves, by personal examination of location of the proposed work, and by such other means as they may prefer, as to the actual conditions and requirements of the work, and shall not at any time after submission of a bid dispute, complain, or assert that there was any misunderstanding in regard to the nature or amount of work to be done.

Contract

"The Contractor shall furnish and pay for all materials, superintendence, labor, equipment, and transportation, except as hereinafter specified, and shall execute, construct, and finish, in an expeditious, substantial and workmanlike manner, to the satisfaction and acceptance of the Commission, excavation of the proposed area to rock, the construction of reinforced concrete and masonry walls, earth dike, chemical feed house of pre-settling basin, and 30" pipe line from the pre-settling basin to the water purification plant, including all necessary coffer dams and pumping, excavation and back-filling; all in accordance with plans and specifications hereto attached, identified by the parties hereto or as herein described.

"The work covered by this contract shall be commenced not later than seven (7) days after the day and year first written above, and completed on or before the 30th day of June, 1942, time being of the essence of this contract.

\*    \*    \*    \*    \*    \*    \*

"On or about the tenth day of each month, eighty-five per cent (85%) of the value, proportionate to the amount of the contract, or labor and materials incorporated in the work up to the first day of that month, as estimated by the Engineer, less the aggregate of previous payments, will be paid by the Commission to the Contractor. On substantial completion of the entire work, a sum sufficient to increase the total payments to ninety per cent (90%) of the contract price; and thirty (30) days thereafter, provided the work be fully completed and the contract fully performed, and proof furnished by the Contractor that all bills for material and labor have been paid in full, the balance due under the contract.

"The Contractor and the Commission agree that Specifications and Drawings, together with the Agreement, form the Contract, and that they are as fully a part of the Contract as if hereto attached or herein repeated.

\*    \*    \*    \*    \*    \*    \*

Specifications

General Conditions

"The work called for under these plans and specifications consists of all excavation and disposal, backfilling, all coffer dams, sheet piling and pumping, furnishing and laying of 30" pipe and valves, construction of reinforced concrete baffle walls, masonry walls, and earth dikes, and construction of chemical feed house for the Menasha Water & Light Commission, Menasha, Wisconsin.

"All work is to be performed in accordance with these specifications and the plans attached thereto, and such additional details that may be furnished by the Engineer when necessary, and in accordance with the direction of and to the entire satisfaction of Orbison and Orbison, Consulting Engineers, 206 W. College Avenue, Appleton, Wisconsin, or their authorized representatives.

\*    \*    \*    \*    \*

Material and Labor

"The Contractor is to furnish, at his own expense, all material and labor of every kind necessary for the full and entire completion of the work, except such materials and labor as are hereinafter explicitly mentioned as to be furnished by the Commission.

\*    \*    \*    \*    \*    \*    \*

Extra Work, Additions, Deductions or Alterations

"No part of the work shall be altered from that shown on the drawings or described in the specifications, nor shall any

proof was established that information vital and essential to the bidder in preparing his bid was dishonestly withheld by the defendant for the purpose of misleading and deceiving the bidder. Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933.

In United States v. Atlantic Dredging Company, 253 U.S. 1, 40 S.Ct. 423, 64 L. Ed. 735, the court spoke of the representations as follows: "Representations [made by the government] were deceptive in that the test borings gave information to the Government, not imparted to the bidders,

---

work in the nature of extra or additional work, or any work not contemplated by the specifications, drawings or plans, be performed without the express order of the Engineer; but, should it be deemed expedient by the Engineer, at any time while the work is in progress, to increase or decrease the dimensions, quantity of material or work, or vary the form or dimensions of any part of said work, or vary the work herein contracted for in any other way, the Engineer shall have full power so to do, if one in accordance with the said contract, and to order and direct any such increase, diminution, alteration or extra work to be made or performed, and without in any way vitiating or affecting the said contract, and the Contractor shall in pursuance of such order and directions as he may receive in writing from the said Engineer, execute the work thereby ordered and directed; and the difference in expense occasioned by such increase, diminution or alterations so ordered and directed shall be added to or deducted from the amount payable under this contract; and the said Engineer shall ascertain the amount of such additions or deductions. But, if any extra, additional or different work be proceeded with or executed by the Contractor without previous orders given in writing under the hand of said Engineer, as hereinbefore referred to, no charge for the same will be allowed.

"The Contractor further agrees that he shall have no claim for compensation for extra work, unless the same is previously ordered in writing by said Engineer, and unless the claim for the same, when so ordered, is presented to the Engineer before the 5th day of the month following that during which each specific order is complied with.

Excavation and Back Fill

❖ ❖ ❖ ❖ ❖ * *

"Contractor shall excavate the settling basin area to rock which is at elevation 872 or approximately seven feet below the crest of the Menasha dam. Excavated material shall be disposed of in area controlled by the Park Board, just west of the creek outlet, as directed by the Engineer."

The proposal and acceptance are in these terms.

"Furton Brothers
Menominee, Mich.
Proposal

Proposal for the construction of Pre-settling Basin and 30 inch Pipe Line to Plant for Menasha Water & Light Commission, Menasha, Wisconsin.

Having carefully examined the Advertisement, Instructions to Bidders, Contract Agreement, General Conditions, Specifications, Bonds, and Plans for the proposed work, and having informed ourselves fully in regard to the conditions to be met in its execution, the undersigned proposes to do all the work called for in said specifications and contract and to furnish all the equipment, materials, tools, labor, and all appliances and appurtenances necessary to the full completion of said work in a first class and workmanlike manner at the following lump sum price, to-wit:

A. Seventy-eight Thousand    $78,000.00

| Words | Figures |
|---|---|

B. For earth excavation and disposal that may be added or deducted, the sum of per cubic yard;

Forty Cents    .40

C. For back fill that may be added or deducted, the sum of;

Forty Cents    .40

Per cubic yard.

For all extra work of every description, that may be ordered, not covered by the foregoing unit prices, the Contractor shall receive actual cost of material furnished and labor performed plus 15% per cent for profit, use of tools, equipment, job superintendent, timekeeper, and general supervision, and any other overhead and fixed charges.

The two 30″ flange Gate Valves shall be Crane mfgr. or equal.

The time required to complete work shall be 180 calendar days.

Dated and signed this 17th day of December, 1941.

Signature: Furton Bros. Const. & Engr. Co.
     By Luke A. Furton Co-partner

Address of Bidder: Menominee, Michigan."

of materials more difficult to excavate than those shown by the maps and specifications."

In the case of City of Wheeling v. John F. Casey Co., 4 Cir., 74 F.2d 794, recovery was allowed because the city, having discovered a mistake in the plans and specifications, wilfully concealed this information from the contractors for a long time.

In McDonald v. State, 203 Wis. 649, 235 N.W. 1, the court found that the State had made a positive declaration that the variation would not exceed 25% of the quantities estimated and that this constituted a warranty.

In Wussow v. State, 222 Wis. 118, 267 N.W. 56, 60, the question of warranty and representation was considered, and the court in denying recovery said:

"No contractor qualified to perform highway construction work and especially the work of excavating, grading and preparing a roadbed, could have understood, from the proposal and contract, that the kinds and quantities of the work specified were in the nature of warranties or representations, or that, if the quantities varied to such an extent as to render the estimated quantities not approximate, that he would be permitted to disregard the plain terms of the contract and recover the reasonable value of the services performed. There are too many provisions in the proposal, and the special provisions supplementing the standard specifications, to permit of the conclusion that the estimated quantities set forth in the proposal were understood to be representations or warranties so as to bring this action within the holdings in City of Richmond v. I. J. Smith & Co., 119 Va. 198, 89 S.E. 123; Pitt Construction Co. v. City of Alliance, 6 Cir., 12 F.2d 28; Maney v. Oklahoma City, 150 Okl. 77, 300 P. 642, 76 A.L.R. 258, and Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898."

"Under the contract here considered, it was specifically understood and agreed that the bidder had carefully examined the site of the work and the character, quality, and quantities of the work to be performed; that the estimate of quantities was approximate only and might be greater or less than the estimated quantities; that the bidder should not plead misunderstanding or deception because of such estimate of quantities or of the character, location, or other conditions pertaining to the work; that he would be paid for the actual quantities of the work performed in accordance with the contract; that the bidder was required to examine carefully the site of the work contemplated, and that he was satisfied as to the conditions to be encountered for performing the contract work, or as altered, unless resulting in increases or decreases of more than the restricting percentages stipulated; that the submission of a proposal should be considered conclusive evidence that the bidder had made such examination and was satisfied as to all the conditions and contingencies; that the quantities of any items of work might vary from the quantities scheduled on the plans in the proposal due to unforeseen or other conditions, and that the plaintiff would perform the work for the unit prices unless there occurred an increase or decrease of more than twenty-five per cent. of the total cost of the work calculated from the original proposal quantities and the contract unit prices, upon either of which contingencies he would be entitled to a supplemental agreement. In view of all of these provisions, which were incorporated into the contract, it cannot be said that the estimates of the commission amounted to representations or warranties. The plaintiff alleges no fraud, no misrepresentation, no deception on the part of the commission, and no errors in the plans and specifications except those based upon the estimated quantities. It is our conclusion that the quantity estimates contained in the proposal should not be considered as representations or warranties, and therefore the facts alleged in the first cause of action are not sufficient to constitute a cause of action."

In Hollerbach v. United States, 233 U. S. 165, 34 S.Ct. 553, 554, 58 L.Ed. 898, the specifications contained positive representations as to the condition of the existing dam which was to be reconstructed. The representation was with reference to an artificial structure created by the same agency for whom the new work was being performed. The specifications contained this

statement: "The dam is now backed for about 50 feet with broken stone, sawdust, and sediment to a height of within 2 or 3 feet of the crest."

The specifications provided that the excavations behind the dam must be to the bottom. As the contractor proceeded with the work he found that the dam was not backed with broken stone, sawdust and sediment and below 7 feet from the top to the bottom there was a backing of cribbing of an average of 4.3 feet of sound logs filled with stone. The court held that these positive statements amounted to a warranty of the conditions and held the United States liable.

In MacArthur Brothers Company v. United States, 258 U.S. 6, 42 S.Ct. 225, 226, 66 L.Ed. 433, the contract provided for the construction of a canal. The plaintiff contended that the contract represented that a portion of the work would be done in the "dry" and a portion in the "wet", whereas it was all done in the wet at a cost greatly exceeding what it would have been if done in "dry", since the erection of coffer dams not provided in the specifications was necessary. The contract provided: "It is expected that each bidder will, prior to submitting his bid, visit the site of the work, examine the local conditions, inform himself as to the accessibility of the work, ascertain the character of the material to be excavated * * *."

The proposal was made with the statement: "We make this proposal with a full knowledge of the kind, quantity, and quality of the plant, work and materials required. * * *"

Demurrer to the complaint was sustained and the court said:

"The company was undoubtedly impelled to this investigation by the requirement of its contract to inform itself of the conditions, and that no allowance would be made for the failure to estimate correctly the difficulties attending the execution of the work. Its investigation may or may not have been adequate. It, however, took its chances on that. But, in reality, there was no representation by the government, nor is it alleged that the government had knowledge of the conditions or means of knowledge superior to the knowledge of the company. * * * Such being the situation, does not the case present one of misfortune rather than misrepresentation?

"In the case at bar the Government undertook a project and advertised for bids for its performance. There was indication of the manner of performance but there was no knowledge of impediments to performance, no misrepresentations of the conditions, exaggeration of them, nor concealment of them, nor, indeed, knowledge of them. To hold the government liable under such circumstances would make it insurer of the uniformity of all work, and cast upon it responsibility for all of the conditions which a contractor might encounter, and make the cost of its project always an unknown quantity. It is hardly necessary to say that the cost of a project often determines for or against its undertaking."

■■ The notation of "rock" on the plans cannot be construed as anything but "rock" and certainly not as a warranty or representation that a solid level rock base existed at a depth indicated on the plans by the word "rock". There was no positive or wilful misrepresentation made by defendant or its engineer as claimed by plaintiffs, and they cannot now be heard to plead misunderstanding or deception.

Plaintiffs' claim is without support in fact or in law, and defendant may have judgment dismissing plaintiffs' complaint with costs.

Dated this 7th day of May, 1947.