STATE EX REL. REYNOLDS, Attorney General, Appellant, v.
SMITH, State Treasurer, Respondent.

*March 8—April 2, 1963.*

578

580

For the appellant the cause was argued by *Roy G. Tulane,* assistant attorney general, with whom on the briefs was *George Thompson,* attorney general.

For the respondent there was a brief and oral argument by *Laurence W. Hall* of Madison.

CURRIE, J. We deem the issues on this appeal to be:
(1) Did respondent rightly refuse to sign the instant check which was issued at the request of the attorney general, in the form of a voucher that had been properly audited, as security for costs in a federal court action that the attorney general had instituted pursuant to the direction of the governor?

(2) If the foregoing question be answered in the negative, have subsequent events rendered moot the relief requested with respect to compelling the state treasurer to sign such check?

In resolving the first-stated issue we think it advisable to consider separately these three aspects of the question: (a) The general authority of the state treasurer to refuse to make requested payments from the state treasury; (b) the validity of the instant proposed expenditure represented by the instant $3,500 check; and (c) the test which should be applied by the state treasurer in passing on the validity of this particular expenditure.

*Authority of the State Treasurer to Refuse Payment.*

Sec. 14.42 (4), Stats., charges the state treasurer to "Pay out of the [state] treasury . . . such sums only as are authorized by law to be so paid, if there be appropriate funds therein to pay the same, . . ." This same statutory language was before this court in *State ex rel. Lathers v Smith* (1943), 242 Wis. 512, 8 N. W. (2d) 345 (herein after referred to as the "second *Lathers Case*"). There the state treasurer, having the same surname as respondent, refused to honor an order of the state highway commission for payment of certain highway work. This court affirmed a judgment holding the treasurer liable for damages and costs to the contractor but stated (p. 515):

"There is no question in this case about the good faith of the appellant [state treasurer]. He desired to protect

himself from liability for the payment of funds from the state treasury *which he claimed were not authorized by law. As a public officer, this was his sworn duty."* (Emphasis supplied.)

Although the state treasurer has a duty not to sign a check drawn on the state treasury for a disbursement that is not authorized by law, said treasurer may be compelled to sign a check by writ of mandamus if a court of competent jurisdiction determines the disbursement represented by the check is for a lawful purpose. The treasurer does not then act in a quasi-judicial capacity, because if such a court holds the proposed disbursement to be for a lawful purpose, the duty of the treasurer to sign the proposed check is ministerial in character. The second *Lathers Case, supra,* at page 515. Thus the crucial question in the instant controversy is whether the instant check was for a purpose authorized by law.

### Validity of the Instant Proposed Expenditure.

At the outset we are met by respondent's contention that costs may not be taxed against the state in the absence of a statute so authorizing, and, therefore, the payment of money from the state treasury to provide a fund for security for costs would be illegal. In support of this contention, respondent cites *Noyes v. State* (1879), 46 Wis. 250, 251–253, 1 N. W. 1; *Frederick v. State* (1929), 198 Wis. 399, 400, 224 N. W. 110; *State v. Gether Co.* (1931), 203 Wis. 311, 315, 234 N. W. 331; and *Frankenthal v. Wisconsin R. E. Brokers' Board* (1958), 3 Wis. (2d) 249, 257, 88 N. W. (2d) 352, 89 N. W. (2d) 825. All of these cases arose in Wisconsin courts and involved the issue of taxing costs against the state. Nevertheless, when a state voluntarily enters the courts of another sovereign as a party plaintiff, it thereby waives its sovereign immunity and subjects itself to liability for costs in the same manner as any other litigant.

Anno. 72 A. L. R. (2d) 1379, 1393, sec. 6; *North Dakota v. Minnesota* (1924), 263 U. S. 583, 44 Sup. Ct. 208, 68 L. Ed. 461; Cf. *Clark v. Barnard* (1883), 108 U. S. 436, 447, 2 Sup. Ct. 878, 27 L. Ed. 780.

We turn next to the question of whether the attorney general could legally authorize the expenditure from the state treasury which is represented by the instant check which respondent refused to sign. Sec. 3, art. VI, Wis. Const., provides, "The powers, duties, and compensation of the . . . attorney general shall be prescribed by law." Because of this constitutional provision, the attorney general has no common-law powers. *State v. Milwaukee E. R. & L. Co.* (1908), 136 Wis. 179, 190, 116 N. W. 900; *State ex rel. Haven v. Sayle* (1918), 168 Wis. 159, 163, 169 N. W. 310; and *State v. Snyder* (1920), 172 Wis. 415, 417, 179 N. W. 579. Sec. 14.53, Stats., provides in part as follows:

"14.53 DUTIES OF ATTORNEY GENERAL. The attorney general shall:

"(1) *Represent state.* Appear for the state and prosecute or defend all actions and proceedings, civil or criminal, in the supreme court, in which the state is interested or a party, and attend to and prosecute or defend all civil cases sent or remanded by the supreme court to any circuit court in which the state is a party; and, *when requested by the governor* or either branch of the legislature, appear for the state and prosecute or defend in any court or before any officer, any cause or matter, civil or criminal, *in which the state or the people thereof may be in anywise interested.*" (Italics supplied.)

Sec. 14.12, Stats., which appertains to the duties of the governor, provides in part, "The governor, whenever in his opinion *the rights, interests, or property of the state* have been or are liable to be injuriously affected, may require the attorney general to institute and prosecute any

proper action or proceeding for the redress or prevention thereof; . . ." (Italics supplied.) A significant distinction between the corresponding provisions of secs. 14.53 (1) and 14.12, Stats., is that the former makes specific reference to actions in which the people of the state may have an interest, as well as those in which the state has an interest, whereas the latter does not.

We must also look at the appropriation statute covering the office of attorney general because of the aforequoted clause appearing in sec. 14.42 (4), Stats., by which the state treasurer is charged to pay sums authorized by law "if there be appropriate funds therein to pay the same, . . ." There would not be "appropriate funds" in the state treasury to pay a voucher of the attorney general if it was not for a purpose covered by the legislature's appropriation to the office of attorney general. If the instant check comes under the appropriation to the attorney general's office in effect at the time of respondent's refusal to sign the check, it must do so under these words of sec. 20.180 (3), namely, "a sum sufficient for the payment of expenses incurred by the attorney general, his deputy or assistants in the prosecution or defense of any action or proceeding *in which the state may be a party or may have an interest,* for any . . . clerk of court's fees, . . . or any other expense actually necessary to the prosecution . . . of such cases; . . ." (Italics supplied.) It will be noted that this statute makes no reference to any action or proceeding in which the people of the state may be interested.

We are of the opinion that the quoted provisions of secs. 14.53 (1), 14.12, and 20.180 (3), Stats., must be construed together. We deem that the state does have an interest in any litigation which it brings in the capacity of *parens patriae* to enforce constitutional rights of its citizens. Furthermore, it would seem highly illogical, if sec. 14.12 were

to be so narrowly interpreted as to exclude this type of action from those the governor is empowered to direct the attorney general to bring, when sec. 14.53 authorizes the attorney general to institute such an action at the direction of the governor. We, therefore, hold that the governor is authorized under sec. 14.12 to direct the attorney general to commence a *parens patriae* type of action to enforce the constitutional rights of its citizens, and that the payment of the expenses of such litigation comes under the appropriation provided in sec. 20.180 (3).

It is firmly established by the decisions of this court that the state is the proper party plaintiff to test the validity of an apportionment law in order to protect the constitutional right of its citizens to an equitable apportionment. *State ex rel. Attorney General v. Cunningham* (1892), 81 Wis. 440, 51 N. W. 724, and *State ex rel. Lamb v. Cunningham* (1892), 83 Wis. 90, 53 N. W. 35. See also the comment on these two cases made in *Income Tax Cases* (1912), 148 Wis. 456, 494, 495, 134 N. W. 673, 135 N. W. 164. We deem the state a proper party to institute such an action where the constitutional rights of its citizens sought to be enforced arise under the federal constitution as well as under the state constitution.

In view of the foregoing, it is clear that the attorney general, acting at the direction of the governor, was authorized by secs. 14.12 and 14.53, Stats., to bring the federal court action underlying this controversy. Nevertheless, respondent stresses the federal court's initial decision of May 23, 1962 (reported in 205 Fed. Supp. 673), that the state standing alone did not have legal capacity to maintain the action. The basis for this determination was that the equal-protection-of-the-laws and due-process clauses of the Fourteenth amendment refer only to the right of *"any person"* and that a state is not a person. The opinion also pointed out that, under

Title 28 U. S. C., sec. 1343, the federal courts have consistently held that the state does not qualify as a "person."

Nevertheless, after the complaint was amended by joining five individuals as parties plaintiff, the federal court refused to dismiss the state as a party plaintiff. We are firmly of the opinion that as long as the state remained as a party plaintiff, it was the duty of the attorney general to vigorously prosecute the action. If he determined in good faith that the prosecution of the action would be furthered by the state's contributing the $3,500 required by the federal court to be deposited as security for costs in connection with the action, such $3,500 would constitute a proper expense under sec. 20.180 (3), Stats. It necessarily follows that the $3,500 was a sum "authorized by law" under sec. 14.42 (4), and that it was the duty of respondent to sign the check when it was presented for her signature.

### Test to be Applied by State Treasurer.

In *State ex rel. Lathers v. Smith* (1941), 238 Wis. 291, 305, 299 N. W. 43 (hereinafter referred to as the "first *Lathers Case*"), this court held that the state treasurer was bound to honor the state highway commission's order for payment to relator contractor for certain highway work "in the absence of fraud or gross error." In the instant appeal, relator requests this court to hold that the "fraud or gross error" test imposed by the first *Lathers Case* should be applied in determining the validity of the payment represented by the voucher calling for issuance of the $3,500 check. Because of this request, we deem it advisable to consider what test should have been invoked by respondent in deciding whether or not it was her duty to sign the check.

The fact situation in the first *Lathers Case* markedly differed from that present here. In that case the question before the state treasurer was whether the state highway com-

mission's engineer had acted within the provisions of a certain public contract in reclassifying certain excavated material as "rock excavation" rather than "common excavation." In this case, the question presented to respondent was whether the $3,500 check represented an expenditure that the attorney general was authorized to make under the governing statutes hereinbefore considered. The trial court in its memorandum decision held that, where the questioned payment from the state treasury presents an issue of possible statutory violation, the test to be applied by the state treasurer is whether or not the proposed payment is "palpably illegal." We adopt this test as stated by the trial court. Nevertheless, in the instant case the proposed payment of the $3,500 was not palpably illegal.

We believe that one further facet of this case deserves comment. That is the element of discretion which necessarily enters into any action of the governor in directing the attorney general to commence an action in the name of the state to enforce the constitutional rights of its citizenry as a whole, or a substantial portion thereof. Such discretion is implicit in the phrase, "whenever in his [the governor's] opinion . . ." employed in sec. 14.12, Stats. If there is any reasonable basis for the governor to conclude that the constitutional rights of the state's citizens require protection by such a suit, his action in directing the institution of suit is not palpably illegal even though a court may ultimately decide that such constitutional rights are not being violated, or that the state is not a proper party.

A similar element of discretion is inherent in the determination of the attorney general with respect to the propriety of incurring a particular expense in prosecuting such an action. For example, in the instant federal action, although there were five individual plaintiffs in addition to the state,

the attorney general apparently determined that it was proper for the state to incur the whole $3,500 expenditure as security for costs because the constitutional rights of a substantial part, if not all, of the citizens of the state were at stake, in addition to those of the five individual plaintiffs. So long as there exists any reasonable basis for the governor and attorney general's exercising their discretion in the manner described, and there is no affirmative showing that their actions are palpably illegal, the state treasurer is bound to honor such an exercise of discretion by the governor and attorney general.

### Mootness of Relief Requested.

On August 14, 1962, the circuit court filed its memorandum decision and entered its findings of fact and conclusions of law. On the same day the federal court also entered its final decision in the reapportionment suit instituted by relator. *State of Wisconsin v. Zimmerman* (D. C. Wis. 1962), 209 Fed. Supp. 183. This decision directed dismissal of the suit with costs against the plaintiffs. It appears from this decision that despite the failure of the plaintiffs to deposit the required $3,500 as security for costs, Special Master Wingert conducted hearings and made his findings and recommendations to the court which enabled it to resolve the controversy by its final decision of August 14, 1962. If that decision was the end of the matter, we might well find no further need for any deposit as security for costs thus rendering moot the relief prayed for by relator, namely, that respondent be compelled by peremptory writ of mandamus to sign the $3,500 check. Nevertheless, we have been supplied with a copy of the order which the federal court entered August 22, 1962, pursuant to the mandate of its decision of August 14, 1962. This order provided in part as follows:

"It is further ordered that the clerk of this court enter judgment dismissing the complaint without prejudice to the commencement of a new action after August 1, 1963, and against the plaintiffs, and each of them, for the services and disbursements of the special master, Emmert L. Wingert, including the obligations incurred by him for the court reporter, John R. Adams, and the expert witness, Dr. C. K. Alexander, in the total sum of $5,237.62, and upon such payment the clerk shall satisfy said judgment and disburse said funds to the said special master, court reporter, and expert witness."

It will be noted that plaintiffs are required to pay costs, in the amount of $5,237.62, to the clerk of court, who is then to disburse same as directed in the order. Thus, an order directing respondent to sign the $3,500 check, which is payable to the order of the clerk of the United States district court for the Western district of Wisconsin, will result in the clerk's having $3,500 to apply against this $5,237.62 liability for costs. Therefore, the instant prayer for relief is not moot.

*By the Court.*—Judgment reversed, and cause remanded with directions to issue a peremptory writ of mandamus commanding respondent to sign the $3,500 check described in this opinion.

WILKIE, J., took no part.